Rafey Balabanian (SBN 315962)
rbalabanian@edelson.com
Lily Hough (SBN 315277)
lhough@edelson.com
EDELSON PC
150 California Street, 18th Floor
San Francisco, California 94111
Tel: 415.212.9300
Fax: 415.373.9435

*Counsel for Plaintiff and the Putative Class*

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION**

| | |
|---|---|
| MATTHEW AMANS, individually and on behalf of all similarly situated individuals,<br><br>*Plaintiff,*<br><br>v.<br><br>TESLA, INC., a Delaware corporation,<br><br>*Defendant.* | Case No.<br><br>**CLASS ACTION COMPLAINT FOR:**<br><br>1) **Breach of Contract,**<br>2) **Cal. Bus. & Prof. Code § 17200,**<br>3) **Cal. Bus. & Prof. Code § 7160, and**<br>4) **Cal. Civ. Code. §§ 1750** *et seq.* |

**CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff Matthew Amans brings this Class Action Complaint and Demand for Jury Trial against Tesla, Inc., for its deceptive practice of marketing and selling its solar roof product (referred to herein as the "Solar Roof"). Plaintiff, for his Complaint, alleges as follows upon personal knowledge as to himself and his own acts and experiences, and as to all other matters, upon information and belief, including investigation conducted by his attorneys.

**NATURE OF THE ACTION**

1. Defendant Tesla, Inc. ("Tesla") is a manufacturer and seller of electric vehicles and, more recently, solar panels and battery backup units.

2. Tesla's solar energy business emerged after Tesla's multi-billion-dollar acquisition of a heavily indebted solar panel company called SolarCity, which was co-founded by Elon Musk

CLASS ACTION COMPLAINT                             1

and his cousins. SolarCity was on the brink of collapse when Musk, as CEO of Tesla and a chairman of SolarCity, orchestrated a merger with Tesla in an effort to save the solar panel business (and his own multi-million-dollar investment in it).

3.      In order to persuade Tesla's investors to approve the controversial acquisition, Musk revealed a new product in October 2016—on the set of the television series *Desperate Housewives*—called the Solar Roof. Musk told analysts that Tesla's acquisition of SolarCity and its Solar Roof would create a "huge market" for the combined companies. The merger would ostensibly allow Tesla to sell consumers the entire solar energy solution: generation (solar panels), storage (batteries), and transportation (electric cars).

4.      The Solar Roof promised novel and enticing solar energy solutions for homeowners. Unlike traditional boxy solar panels that sit atop a roof, the Solar Roof was designed to make the roof itself solar powered. The product comprises individual roof tiles with integrated photovoltaic (PV) solar cells capable of generating energy, while having the appearance of a traditional roof. During the product's reveal, Musk touted the Solar Roof as more durable than a traditional roof and a more affordable energy solution for homeowners.

5.      However, the technology behind the Solar Roof was far from complete at the time Musk revealed the product. The Solar Roof that Musk showcased to investors at the October 2016 event was in fact made entirely of non-functional "dummies," according to engineers familiar with it. Some even referred to the event as "vaporware." Thus, when the Solar Roof entered the market shortly thereafter, its technology was subprime, and it continued to disappoint in the years that followed. Unsurprisingly, Tesla struggled to sell its Solar Roof after the SolarCity acquisition. Several California utility companies reported only 21 installations total. Ultimately, industry commentators concluded that Tesla's Solar Roof and its solar business as a whole was a "flop."

6.      Tesla continued to revise the Solar Roof's technology and, while still struggling to turn a profit after its SolarCity acquisition, the company released a "Version 3" of the Solar Roof (the now-current version) in late 2019. The newest version of the Solar Roof promised several improvements over the previous versions including faster installation times and lower costs.

CLASS ACTION COMPLAINT                                2

Consumers wishing to purchase a Solar Roof, including Plaintiff and the Class (defined below), pre-ordered the product, agreed to a total project cost (based on their unique installation and roof requirements), paid a deposit, and prepared their properties for installation.

7. Unfortunately, after finalizing its purchase and installation agreements with customers who pre-ordered the newest Solar Roof, Tesla raised the product's price inexplicably—in some instances just days before the customer's scheduled installation. Tesla's price increases substantially (and unilaterally) changed the terms of the parties' purchase agreements and represented as much as a 100% increase for many consumers, amounting to tens of thousands of dollars of unanticipated costs.

8. Tesla's Solar Roof price increase is a textbook bait and switch scheme. The company lured in consumers with promises of affordable solar energy solutions and now seeks to hold its customers hostage with unanticipated (and unjustified) additional project costs in order to make up the lost profit from the SolarCity acquisition. As a result, if consumers want to move forward with the Solar Roof installation in which they have already invested considerable time and money, they will have to pay above and beyond the price they originally agreed to, as no alternative product currently exists on the market. This lawsuit seeks to hold Tesla accountable for this deceptive, unlawful, and unjust conduct.

**PARTIES**

9. Matthew Amans is a natural person and a citizen of the State of California.

10. Defendant Tesla, Inc., is a corporation organized and existing under the laws of Delaware with its principal place of business located at 3500 Deer Creek Road, Palo Alto, California 94304.

**JURISDICTION AND VENUE**

11. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2), because (i) at least one member of the Class is a citizen of a different state than Defendant, (ii) the amount in controversy exceeds $5,000,000, exclusive of interests and costs, and (iii) none of the exceptions under that subsection apply to this action.

CLASS ACTION COMPLAINT                    3

12. This Court has personal jurisdiction over Defendant because Defendant conducts business in California and is headquartered in California and this District.

13. Venue is proper pursuant to 28 U.S.C. § 1391(b) because Defendant maintains its headquarters and conducts significant business in this District.

## COMMON FACTUAL ALLEGATIONS

### *Overview of the Tesla Solar Roof*

14. Tesla currently offers for sale two solar products: traditional solar panels which are installed *on top of* existing roofs, and the Solar Roof which *replaces* the entire existing roof. The Solar Roof is a new technology and consists of roof tiles with embedded photovoltaic (PV) cells capable of generating electricity from the sun.

15. This new technology promises several new benefits to homeowners.

16. First, unlike traditional rectangular solar panels which protrude from the roof, Solar Roof tiles seamlessly integrate into the consumer's roof and thus are more aesthetically pleasing for homeowners. See Figure 1. Tesla touts this aesthetic benefit on its website: "Replace your current roof with Solar Roof and power your home with a fully integrated solar system. With a seamless design, each tile looks great up-close or from the street, complementing your home's architecture."



**(Figure 1)**

CLASS ACTION COMPLAINT                              4

17. Additionally, according to Tesla, the Solar Roof promises to be more durable than a standard roofing tile. On its website Tesla explains, "Solar Roof tiles are more than three times stronger than standard roofing tiles and are engineered for all-weather protection. With a 25-year warranty, Solar Roof lasts longer than an average roof and protects your home for decades to come."

18. Another significant benefit that the Solar Roof promises over traditional solar panels is the reduced maintenance associated with the underlying roof. Traditional solar panels may outlast the underlying roof, and thus homeowners must disassemble and re-install an existing solar system in order to address any replacement or repairs needed for the underlying roof. Alternatively, some roofs may have to be entirely replaced before installing a traditional solar panel system, depending on their condition.

19. Tesla advertises the affordability of the Solar Roof as one of its key features. On its website, Tesla claims that the price of the Solar Roof is cheaper than purchasing electricity from the power grid: "Power your home at the lowest price per watt of any national provider and take control of your monthly electricity bill." Indeed, Musk drew public attention to the affordability of the Solar Roof by stating, "It's looking quite promising that a solar roof will actually cost less than a normal roof before you even take the value of electricity into account. So the basic proposition would be, 'Would you like a roof that looks better than a normal roof, lasts twice as long, costs less and by the way generates electricity?' It's like, why would you get anything else?"

20. By advertising these features, Tesla has attracted considerable consumer interest in its Solar Roof, particularly with consumers building or remodeling a home, or already planning to replace their existing roof.

21. The purchase of a Solar Roof takes place in several steps. Tesla first provides consumers with an early quote for the estimated price of the consumer's Solar Roof project, which ostensibly comprises the price of the Solar Roof (per estimated square foot) and standard installation costs; then, after exploring the homeowner's unique project needs, Tesla offers a

CLASS ACTION COMPLAINT                 5

1  "contract price" which includes the price of the Solar Roof system (per custom square foot
2  measurements), standard installation costs, and the customer's unique pre-construction needs.

3    22.    Consumers initiate the transaction by visiting Tesla's website and providing Tesla
4  with their address and current electricity usage. In "Step 1," Tesla performs calculations that
5  measure the consumer's roof and provides a suggested size based on the consumer's electricity
6  consumption and roof size. In advertising these services, Tesla promises to "recommend a system
7  that maximizes your savings based on your average electricity usage." *See* Figure 2.



**(Figure 2)**

   23.    After Step 1, Tesla provides consumers with an estimated price for the Solar Roof
based on its initial measurements, along with an option to place a pre-order by paying a deposit.
Tesla intentionally advertises a lower estimated price at this early phase than what the company
reasonably expects the consumer to pay on the final project in order to lure consumers into making
a deposit and beginning the project.

   24.    In Step 2 of the process, Tesla offers its "Design" and "Site Visit" services. In the
"Design" phase, a Tesla technical team manually reviews satellite images of the consumer's roof

CLASS ACTION COMPLAINT                         6

and creates a schematic of the solar installation (showing the placement of the solar tiles and their size). *See* Figures 2-3. In the "Site Visit" phase, a Tesla representative conducts an in-person inspection of the consumer's roof. In advertising these services, Tesla explains that, "[p]rior to installation, we perform a site visit to confirm no additional roof or site repairs are required." *See* Figure 2.



**(Figure 3)**

25.     According to Tesla's advertisements, the purpose of Step 2 is to identify any anomalies or unique shapes in a customer's roof and to recommend an appropriate size of the solar array (in other words, the amount of electricity, in kilowatt hours, the Solar Roof can generate on an average day). Tesla compliments this review process with an in-person site visit to detect any unexpected complexities associated with the Solar Roof installation that may not have been readily apparent from satellite images.

26.     Consumers finalize their purchase by signing a "Solar Roof Purchase & Home Improvement Agreement" (the "Solar Roof Purchase Agreement"). The Solar Roof Purchase Agreement contains a consumer's Solar Roof project specifications determined during the review

CLASS ACTION COMPLAINT                                7

phase (including the size of the Solar Roof and pre-construction needs) and a contract price, based on those specifications.

27. Consumers reasonably rely on Tesla's representations that the review phase enables Tesla to determine the appropriate size and scope of the project and to identify any anomalies in the project site which may increase the project's total cost. Because the Solar Roof Purchase Agreement is entered into at or near the conclusion of Tesla's review phase, customers reasonably rely on the contract price to be the final or nearly final price for their entire Solar Roof project.

***Tesla Increased the Price of the Solar Roof***

28. On or around April 10, 2021, Tesla sent consumers who pre-ordered a Tesla Solar Roof an email indicating that it increased the Solar Roof prices and will no longer honor consumers' contracts (the "Price Increase Notice"). The email stated:

> We have increased the price of Solar Roof and have added adjustments for individual roof complexity. Learn More
>
> You will receive an email in the next 1-2 days when your new agreement is ready for your review and acceptance before moving forward. If you are no longer interested in moving forward with Solar Roof, you can cancel your order by logging into your Tesla Account and your deposit will automatically be refunded.
>
> We will be prioritizing customers based on the order in which they accept their updated agreements.

29. Consumers who received the April 10 email already signed a contract and agreed to a final price for the entire Solar Roof installation. These consumers are longtime Tesla customers who have been waiting for an installation with signed contracts for as long as a year.

30. In anticipation of the Solar Roof installation, many consumers spent thousands of dollars to make accommodations and alterations to their property such as trimming trees to reduce shade on their roof, reenforcing their roof structure in anticipation of the increased weight, and converting their power meters as required by their utility company. Many consumers also began to obtain financing for their Solar Roof.

CLASS ACTION COMPLAINT                              8

31.  Tesla's Price Increase Notice imposed significant and material changes to the existing project costs. Consumers have reported price hikes that range from 30% and up to (and even exceeding) 100% of the previous agreed-upon price.

32.  For instance, the publication *Electrek* interviewed one consumer who entered into a contract for a Solar Roof system at a total price of $77,019.22, signed a loan agreement for that amount, and spent $5,000 on home improvement preparations.[1] On April 10, 2021, Tesla increased that consumer's system price to $118,870.33—*over $41,000 beyond the original contract price*.

33.  Another consumer told the publication *The Verge* that "he signed a contract in February to install the solar roof for $35,000, with an additional $30,000 for the batteries. Later, he received a 'terse email' from Tesla stating that in several days he would receive a new contract with higher prices. He was told he now owed $75,000 for the solar roof — *a 114 percent increase* — and $35,000 for the batteries."[2]

34.  In many instances, the Solar Roof Price Increase Notice came just days or weeks before consumers' scheduled installations. Now consumers are left with two options: 1) either pay Tesla for the massive price hike, or 2) cancel their project, in which they have already invested significant time and money.

35.  Even worse, in the Price Increase Notice, Tesla implied that the company would delay the installation project if the consumer did not accept the new terms—and the massive price hike—right away. ("We will be prioritizing customers based on the order in which they accept their updated agreements.") Many Solar Roof pre-order customers have waited months (for some, even a year) for their installation; now, Tesla is threatening them with further delays if they do not agree to Tesla's unilateral new terms.

---

[1] James Dow, *Tesla hikes solar roof price on contracts signed over a year ago*, ELECTREK, (April 11, 2021), https://bit.ly/3tGAgdR.

[2] Andrew J. Hawkins, *Tesla is burning its solar roof customers with a huge price increase*, THE VERGE (April 12, 2021), https://bit.ly/2RIVlah.

CLASS ACTION COMPLAINT            9

36. Tesla knows and understands that it lacks any real competition and that its customers lack any alternatives to complete their half-finished projects, and it hopes that consumers will give in to its price increase, as a result.

37. Before the company issued the Price Increase Notices, Musk revealed that the company made "significant mistakes" in its Solar Roof project. In a conference call with investors, Musk said Tesla has run into trouble "assessing the difficulty of certain roofs," and said that the "complexity of roofs varies dramatically." Musk also admitted that Tesla's solar energy division is still not profitable.

38. Plaintiff and the Class now seek to enforce their contracts with Tesla for their previously agreed-upon price of the Solar Roof installation.

## FACTS SPECIFIC TO PLAINTIFF

39. Plaintiff Amans pre-ordered a Solar Roof and battery backup units from Tesla in June 2020.

40. After Tesla representatives inspected Amans' roof by using satellite images and conducted an in-person site visit, Amans signed a final Solar Roof Purchase Agreement on March 20, 2021 for the total amount of $71,074.42, which included $54,035.69 for the Solar Roof; the remainder of the contract price comprised of accessories and pre-construction costs.

41. In anticipation of the Tesla Solar Roof installation, Amans made changes to his home. For instance, he converted his electrical plan to accommodate solar—which resulted in a higher utility bill without an installed Solar Roof. He also paid for landscaping repairs to limit shade to the roof (to optimize the anticipated Solar Roof), such as having trees trimmed and removed. Amans did not install a new roof on his home that needed a replacement and he refrained from upgrading his home's windows and skylights due to his anticipated Solar Roof installation.

42. On April 10, 2021—almost 9 months after pre-ordering the Solar Roof—Amans received a Price Increase Notice from Tesla. Subsequently, Tesla sent Amans a revised Solar Roof Purchase Agreement in the amount of $146,462.22, *an increase of 106%*. Tesla did not make any

CLASS ACTION COMPLAINT                               10

adjustments to the accessory needs or pre-construction costs, but rather increased the price of the Solar Roof product from $54,035.69 to $122,404.46.

43. Amans did not accept Tesla's price increase and wishes for Tesla to honor its agreed-upon price of $71,074.42.

## CLASS ALLEGATIONS

44. **Class Definition:** Plaintiff Matthew Amans brings this action pursuant to Federal Rule of Civil Procedure 23(b)(2) and Rule 23(b)(3) on behalf of himself and a Class of similarly situated individuals defined as follows:

> **Nationwide Class:** All individuals in the United States who received a Price Increase Notice.

The following people are excluded from the Class: (1) any Judge or Magistrate presiding over this action and the members of their family; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and their current or former employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

45. **Numerosity**: The exact number of members of the Class is unknown and is not available to Plaintiff at this time, but individual joinder in this case is impracticable. The Class likely consists of thousands of individuals. Members of the Class can be easily identified through Defendant's records.

46. **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and the other members of the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include but are not limited to the following:

   a. Whether Defendant breached its contract;

b.      Whether Defendant violated Cal. Bus. & Prof. Code § 17200; and

c.      Whether Defendant violated Cal. Bus. & Prof. Code § 7160.

47.     **Typicality:** Plaintiff's claims are typical of other members of the Class, in that Plaintiff and the members of the Class sustained damages arising out of Defendant's uniform wrongful conduct.

48.     **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Class and have retained counsel competent and experienced in complex class actions. Plaintiff has no interest antagonistic to those of the Class, and Defendant has no defenses unique to Plaintiff.

49.     **Policies Generally Applicable to the Class**: This class action is appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the Class as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class, and making final injunctive relief appropriate with respect to the Class as a whole. Defendant's policies challenged herein apply and affect members of the Class uniformly and Plaintiff's challenge of these policies hinges on Defendant's conduct with respect to the Class as a whole, not on facts or laws applicable only to Plaintiff. Plaintiff and the members of the Class have suffered harm and damages as a result of Defendant's unlawful and wrongful conduct.

50.     **Superiority**: This case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy because joinder of all parties is impracticable. The damages suffered by the individual members of the Class will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the individual members of the Class to obtain effective relief from Defendant's misconduct. Even if members of the Class could sustain such individual litigation, it would still not be preferable to a class action because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this

Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single Court. Economies of time, effort, and expense will be fostered and uniformity of decisions ensured.

51. Plaintiff reserves the right to revise the foregoing "Class Allegations" and "Class Definition" based on facts learned through additional investigation and in discovery.

**FIRST CAUSE OF ACTION**
**Breach of Contract**
**(On Behalf of Plaintiff and the Class)**

52. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

53. Plaintiff and the Class entered into a valid contract with Defendant for the purchase and installation of the Solar Roof and other accessories. Most importantly, Plaintiff and the Class agreed to a specific contract price for the purchase and installation of the Solar Roof, and Defendant agreed that the contract price would only change if additional costs arose with respect to repairs needed to install the Solar Roof.

54. Plaintiff and the Class paid a deposit to purchase the Solar Roof and, in reliance on Defendant honoring the contract price, began to make alterations and accommodations to their properties in anticipation of the installation.

55. Defendant breached its contract with Plaintiff and the Class by increasing the price of the Solar Roof in violation of the contract. Defendant also anticipatorily breached the contract by indicating in the Price Increase Notice that it would not perform its contractual obligation to install the Solar Roof unless and until Plaintiff and the Class accepted Defendant's unilateral adjustment to the contract's terms.

56. Plaintiff and the Class are now damaged as a result of Defendant's breach and anticipatory breach. In order to mitigate their losses, Plaintiff and the Class will be forced to pay for the price increase.

57. Because no comparable products to the Solar Roof currently exist, there is no adequate remedy for Plaintiff and the Class under the law. As such, Plaintiff and the Class seek

specific performance under the last-agreed-upon Solar Roof Purchase Agreement that existed prior to the Price Increase Notice.

**SECOND CAUSE OF ACTION**
**Violation of the California Unfair Competition Law**
**Cal. Bus. & Prof. Code § 17200** *et seq.*
**(On Behalf of Plaintiff and the Class)**

58. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

59. California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.*, protects both consumers and competitors by promoting fair competition in commercial markets for goods and services.

60. The UCL prohibits any unlawful, unfair, or fraudulent business act or practice, including the employment of any deception, fraud, false pretense, false promise, misrepresentation, or concealment, suppression, or omission of any material fact. A business practice need only meet one of the three criteria (unlawful, unfair, or fraudulent) to be considered a violation of the statute.

61. Defendant's business practices are unlawful because, as detailed below, they constitute numerous violations of the CLRA and Cal. Bus. & Prof. Code § 7160.

62. Defendant's business practices are fraudulent because their representations about the cost of the Solar Roof were likely to deceive the general public and because Defendant falsely represented its services had characteristics or were of a particular standard that they were not. The price of a consumer product is a material term of a transaction because it directly affects a consumer's choice of, or conduct regarding, whether to purchase a product; thus, any deception or fraud related to the price of a product is materially misleading. Defendant's fraudulent business practices include advertising deceptively low price estimates, misrepresenting the impact that its design and review services would have on the final project cost, raising the price of the Solar Roof at the eleventh hour (and demanding a new price inconsistent with its previous representations), and misrepresenting the nature of its Price Increase Notices as unanticipated project costs.

63. Defendant's business practices are also unfair. A business act or practice is "unfair" under the UCL if the reasons, justifications and motives of the alleged wrongdoer are outweighed

by the gravity of the harm to the alleged victims. A business act or practice is also "unfair" under the UCL if the conduct or practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers. Defendant's have engaged in unfair business practices, specifically, by abandoning Solar Roof projects where the customer refused to agree to Defendant's price hikes. This conduct is unfair because the injuries caused by it are not outweighed by any countervailing benefits to consumers or competition, and the injury is one that consumers themselves could not reasonably have avoided. Given the information asymmetry between Defendant and consumers regarding the true costs of the Solar Roof, Defendant knew or had reason to know that consumers could not have reasonably known or discovered the true cost of the Solar Roof when conducting any stage of the transaction, including signing their Solar Roof Purchase Agreement, and Defendant knew or had reason to know that consumers would be injured if Defendant abandoned their project.

64. Defendant's fraudulent, unlawful, and unfair conduct occurred during the sale of consumer product, and therefore occurred in the course of Defendant's business practices.

65. Defendant's fraudulent, unlawful, and unfair conduct directly and proximately caused Plaintiff and the Class damages.

66. But for Defendant's conduct as described herein, Plaintiff and the Class would not have purchased the Solar Roof or incurred any other costs associated with the anticipated installation of the Solar Roof.

67. Pursuant to Cal. Bus. & Prof. Code § 17203, Plaintiff seeks an order requiring Defendant to cease the unfair practices described herein and to perform the Solar Roof installations, at the price it agreed to with Plaintiff and the Class.

**THIRD CASE OF ACTION**
**Violation of Cal. Bus. & Prof. Code § 7160**
**(On Behalf of Plaintiff and the Class)**

68. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

69. Plaintiff and the Class are a "Person" as defined by Cal. Bus. & Prof. Code § 7150.

70. Defendant is a "solicitor" because it advertised, solicited, and induced Plaintiff and the Class to purchase a Solar Roof.

71. Plaintiff and the Class entered into a Solar Purchase Agreement with Defendant to purchase and install the Tesla Solar Roof and other accessories. The Solar Purchase Agreement is an agreement to conduct home improvement work as it includes the installation of a new home improvement good and modernization of a roof on the Plaintiff's and the Class's properties.

72. Defendant induced Plaintiff and the Class to enter into a Solar Purchase Agreement by advertising false price estimates and deceptive design and review services purportedly designed to control project costs.

73. Defendant agreed to a contract price in writing with Plaintiff and the Class and entered into the Solar Purchase Agreement, based on the outcome of Defendant's project review and design.

74. Defendant knowingly made false statements about the true price of the Solar Roof and its installation and/or made false statements about the purpose and character of its design and review services.

75. Defendant knew or should have known the true price of the Solar Roof and installation costs. Given the information asymmetry between Defendant and Plaintiff and the Class regarding the true costs of the Solar Roof, Defendant knew or had reason to know that Plaintiff and the Class could not have reasonably known or discovered the falsity of Defendant's representations when signing their Solar Roof Purchase Agreement.

76. Plaintiff and the Class now seek damages, including statutory damages and attorneys' fees, under Cal. Bus. & Prof. Code § 7160.

**FOURTH CASE OF ACTION**
**Public Injunctive Relief for Violations of**
**California's Consumer Legal Remedies Act**
**(On Behalf of Plaintiff)**
**(Cal. Civ. Code. §§ 1750 *et seq.*)**

77. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

CLASS ACTION COMPLAINT         16

78. Plaintiff brings this Count on behalf of the general public in the State of California and/or for the primary benefit of the general public, and his benefit only incidentally as a member of the general public, to enjoin conduct injurious to the general public.

79. The California Consumer Legal Remedies Act ("CLRA") sets forth a list of prohibited "unfair or deceptive" practices in a "transaction" relating to the sale of "goods" or "services" to a "consumer."

80. The Legislature's intent in promulgating the CLRA is reflected in Section 1760, which mandates that its terms are to be "liberally [c]onstrued and applied to promote its underlying purposes, which are to protect consumers against unfair and deceptive business practices and to provide efficient and economical procedures to secure such protection."

81. Defendant's Solar Roof constitutes a "good" under Cal. Civ. Code § 1761(a) and its design, review, and installation services constitute "services" under Cal. Civ. Code § 1761(b).

82. Plaintiff is a "consumer" under Cal. Civ. Code § 1761(d) and has suffered damage as a result of the use or employment by Defendant of the methods, acts, or practices set forth below, which are unlawful under Cal. Civ. Code § 1770(a).

83. Plaintiff, on behalf of the general public, requests that the Court—to protect and enforce important public rights and restrain conduct injurious to the general public—enter a permanent injunction prohibiting Defendant, its agents, servants, employees, and all person acting in concert with it, from engaging in the following conduct with respect to the sale of the Solar Roof:

(a) representing that Defendant's pre-purchase and pre-installation review services have the use or benefit of detecting additional or abnormal costs associated with the purchase of a Solar Roof, when they do not, in violation of Cal. Civ. Code § 1770(a)(5);

(b) advertising to the general public that the Solar Roof will cost a certain amount with the intent to charge consumers more than that advertised amount, in violation of Cal. Civ. Code § 1770(a)(9);

(c) representing that additional, unforeseen repair services are needed in order to install the Solar Roof, when they are not, in violation of Cal. Civ. Code § 1770(a)(15);

     (d)    representing that Defendant will only change the contract price if additional repairs or installation-related work is needed, when it intends to change the price of the Solar Roof product itself, in violation of Cal. Civ. Code § 1770(a)(7) & (16); and/or

     (e)    offering to enter into contractual relationships with the general public governed by unconscionable contract clauses, in violation of Cal. Civ. Code § 1770(a)(19).

84. Defendant knew, or should have known, that its representations and advertisements about the quality of its pre-purchase review services and the total cost of its Solar Roof contracts were false or misleading.

85. As a result of Defendant's unlawful conduct, Plaintiff suffered economic damages as stated herein.

86. Plaintiff presently seeks only injunctive relief under this count. If Defendant fails to remedy the violations alleged herein within 30 days of receipt of this notice of violations, Plaintiff will amend this Complaint to add claims for actual, punitive, and statutory damages pursuant to the CLRA.

87. Plaintiff further requests that the Court—to protect and enforce important public rights and prevent conduct injurious to the general public—enter a permanent injunction affirmatively compelling Defendant, its agents, servants, employees, and all person acting in concert with it, to disseminate corrective advertising and/or other notice to the general public sufficient to accurately inform the general public about the true costs, terms, and characteristics of the Solar Roof.

88. In addition to the public injunctive remedies set forth above, Plaintiff also seeks an award of attorneys' fees pursuant to the private attorney general doctrine, codified at Cal. Civ. Proc. Code § 1021.5, for enforcing important rights "affecting the public interest."

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Matthew Amans, on behalf of himself and the Class, respectfully request that the Court enter an order:

A. Certifying this case as a class action on behalf of the Class defined above, appointing Plaintiff Matthew Amans as the representatives of the Class, and appointing his counsel as class counsel;

B. Declaring that Defendant's actions, as set out above constitute a breach of contract and violate the UCL, CLRA, and Cal. Bus. & Prof. Code § 7160.

C. Awarding damages, including injunctive relief, statutory damages, and specific performance of contract;

D. Awarding Plaintiff and the Class their reasonable litigation expenses and attorneys' fees;

E. Awarding Plaintiff and the Class pre- and post-judgment interest, to the extent allowable;

F. Awarding such other injunctive and declaratory relief as is necessary to protect the interests of Plaintiff and the Class; and

G. Awarding such other and further relief as the Court deems reasonable and just.

**DEMAND FOR JURY TRIAL**

Plaintiff Matthew Amans demands a trial by jury for all issues so triable.

Dated: May 12, 2021         Respectfully submitted,

**MATTHEW AMANS**, individually and on behalf of all similarly situated individuals,

By: /s/ Lily E. Hough

Rafey Balabanian (SBN 315962)
rbalabanian@edelson.com
Lily E. Hough (SBN 315277)
lhough@edelson.com
EDELSON PC
150 California Street, 18th Floor
San Francisco, California 94111
Tel: 415.212.9300
Fax: 415.373.9435

CLASS ACTION COMPLAINT                    19