Rafey S. Balabanian (SBN 315962)
rbalabanian@edelson.com
Lily E. Hough (SBN 315277)
lhough@edelson.com
**EDELSON PC**
150 California Street, 18th Floor
San Francisco, California 94111
Tel: 415.212.9300
Fax: 415.373.9435

Eve-Lynn Rapp (admitted *pro hac vice*)
erapp@edelson.com
**EDELSON PC**
2101 Pearl Street
Boulder, Colorado 80302
Tel: 720.741.0076
Fax: 720.741.0081

Attorneys for *Amans* Plaintiff

Justin T. Berger (SBN 250346)
jberger@cpmlegal.com
Sarvenaz "Navy" J. Fahimi (SBN 226148)
sfahimi@cpmlegal.com
Kelsey L. Campbell (SBN 324015)
kcampbell@cpmlegal.com
**COTCHETT, PITRE & McCARTHY, LLP**
San Francisco Airport Office Center
840 Malcolm Road
Burlingame, CA 94010
Telephone: (650) 697-6000
Facsimile: (650) 697-0577

Attorneys for *Malek* Plaintiff

Tina Wolfson (SBN 174806)
Robert Ahdoot (SBN 172098)
**AHDOOT & WOLFSON, PC**
2600 West Olive Avenue, Suite 500
Burbank, CA 91505
Telephone: (310) 474-9111
Facsimile: (310) 474-8585
twolfson@ahdootwolfson.com
rahdoot@ahdootwolfson.com

Peter A. Muhic (*pro hac vice* to be filed)
**LeVAN MUHIC STAPLETON LLC**
One Liberty Place
1650 Market Street, Suite 3600
Philadelphia, PA 19103
Telephone: (215) 561-1500
pmuhic@levanmuhic.com

Edwin J. Kilpela, Jr. (*pro hac vice* to be filed)
**CARLSON LYNCH LLP**
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222
Telephone: (412) 322-9243
Facsimile: (412) 231-0246
ekilpela@carlsonlynch.com

Attorneys for *Kim* Plaintiffs

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

| | |
|---|---|
| **MATTHEW AMANS**, individually and on behalf of all similarly situated individuals,<br><br>Plaintiff,<br><br>v.<br><br>**TESLA, INC.**, a Delaware corporation,<br><br>Defendant. | Case No. 5:21-CV-03577-LHK<br>Case No. 5:21-CV-03681-LHK<br>Case No. 5:21-CV-05528-LHK<br><br>(Consolidated Per Docket No. 22).<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR APPOINTMENT OF INTERIM LEAD COUNSEL**<br><br>Date:   October 22, 2021<br>Time:  1:00 p.m.<br>Judge: Hon. Lucy H. Koh |

1  Defendant Tesla, Inc. ("Defendant" or "Tesla") takes no issue with the appointment of interim

2  class counsel over these consolidated cases. It does, however, object to the appointment of three

3  attorneys, Eve-Lynn Rapp, Peter A. Muhic, and Justin T. Berger (collectively, "Proposed Interim

4  Lead Counsel"), all as interim co-lead counsel. In support, Tesla argues that courts only appoint co-

5  lead—as opposed to a single—interim counsel in cases evidencing a "special need" for multiple

6  appointments, and suggests that the appointment of one interim lead attorney (as opposed to three) is

7  the only way to avoid inefficiencies and duplication of efforts in this case. Neither argument holds

8  water.

9  First, the idea that the appointment of co-lead counsel is reserved for "special" occasions just

10  is not true. Courts in this district and elsewhere frequently appoint multiple co-leads. *See, e.g.*, *In re*

11  *Qualcomm Antitrust Litig.*, No. 17-md-02773-LHK, 2017 WL 2222531, at *1 (N.D. Cal. May 15,

12  2017) (Koh, J.) (appointing two attorneys as co-lead interim class counsel, along with a third as a

13  member of a steering committee); *Bartling v. Apple Inc.*, No. 5:18-cv-00147-EJD, 2018 WL

14  4804735, at *1 (N.D. Cal. Apr. 27, 2018) (consolidating two class action lawsuits asserting consumer

15  fraud claims, and appointing three law firms as interim co-leads); *In re 5-Hour Energy Mktg. v.*

16  *Innovation Ventures, LLC*, No. 13-cv-4001-PSG-PLAX, 2013 WL 12134144, at *5 (C.D. Cal. Nov.

17  8, 2013) (appointing three attorneys from three law firms as interim co-leads); *Moehrl v. Nat'l Ass'n*

18  *of Realtors*, No. 19-cv-01610, 2020 WL 5260511, at *2 (N.D. Ill. May 30, 2020) (appointing three

19  attorneys from three law firms as interim co-leads); *In re Navistar Maxxforce Engines Mktg., Sales*

20  *Pracs. & Prod. Liab. Litig.*, No. 14-cv-10318, 2015 WL 1216318, at *1 (N.D. Ill. Mar. 5, 2015)

21  (appointing three attorneys from three law firms as interim co-leads); *J.S.X. Through Next Friend*

22  *D.S.X. v. Foxhoven*, 330 F.R.D. 197, 218 (S.D. Iowa 2019) (appointing three attorneys from three law

23  firms as interim co-leads); *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, No.

24  MDL 05-1720(JG)(JO), 2006 WL 2038650, at *3 (E.D.N.Y. Feb. 24, 2006) (appointing three law

25  firms as interim co-lead counsel).

26  This is entirely in keeping with the letter and spirit of Rule 23(g), which does not "restrict[] or

27  address[] the question whether more than one attorney should be appointed as class counsel." 7B

28  Charles Alan Wright et al., Federal Practice & Procedure § 1802.3 (3d ed. 2005); *see also* Fed. R.

Civ. P. 23(g) advisory committee's note to 2003 amendment ("The rule states that the court should appoint 'class counsel.' In many instances, the applicant will be an individual attorney. In other cases, however, an entire firm, or perhaps numerous attorneys who are not otherwise affiliated but are collaborating on the action will apply."). It is also consistent with contemporary practice guides, *see In re Santa Fe Nat. Tobacco Co. Mktg. & Sales Pracs. & Prod. Liab. Litig.*, No. MD 16-2695 JB/LF, 2018 WL 4200315, at *5 (D.N.M. Aug. 31, 2018) (quoting Duke Law Center for Judicial Studies, *MDL Standards and Best Practices*, at 29 (Sep. 11, 2014) (a district court "should not appoint more than three attorneys to serve as lead counsel in any matter")), and even the decisions identified by Tesla, *see In re Parking Heaters Memorandum Antitrust Litig.*, 310 F.R.D. 54, 57-58 (E.D.N.Y. 2015) (rejecting proposal for appointment of four co-leads, but also rejecting argument that the court should only appoint one lead firm because "the difference between one law firm and two as leaders seems ultimately a minor one.").

And contrary to Tesla's suggestion, such leadership structures are not reserved for extraordinarily complex cases, or ones with "many consolidated actions" or "an excessive number of parties." (Opp. at 5 (quoting *Hodges v. Bon Secours Health Sys., Inc.*, Nos. RDB-16-1079 & RDB-16-1150, 2016 WL 4447047, at *2 (D. Md. Aug. 24, 2016).) Rather, three-way leadership appointments are used in complex and "relatively straightforward litigation" alike, along with ones consolidating as few as two class action lawsuits. *See, e.g.*, *In re iPhone 4S Consumer Litig.*, No. C 12-1127 CW, 2012 WL 12960637, at *2 (N.D. Cal. July 5, 2012) (referencing prior appointment of three lawyers as co-lead counsel over two consolidated class action lawsuits, and noting that "the Court allowed the first three firms to serve [as interim class counsel], instead of one or two of them, because they agreed to share the responsibilities . . . in this relatively straightforward litigation").[1]

Second, Tesla's forecasted (but unsupported) worries about efficiency cannot overcome the Plaintiffs' own recommendations and preferences regarding who should lead their cases. Unsurprisingly, the objections raised by Tesla are hardly novel; many of the appointments discussed

---

[1]     At the time of appointment, the *In re iPhone 4S* case involved two class action lawsuits asserting claims under California's consumer protection laws, and related common law theories. *Fazio v. Apple, Inc.*, No. 12-cv-01127-CW, dkt. 14 (N.D. Cal. Mar. 29, 2012) (order consolidating cases and appointing interim co-lead counsel).

1    herein came over a defendant's identical concerns about "efficiency" and corresponding suggestion

2    that a single appointment is a better choice. *See, e.g., Moehrl*, 2020 WL 5260511, at *2 (rejecting

3    argument that one, rather than three, appointments should be made, and noting that "it is not unusual

4    for multiple firms to serve as interim co-lead counsel"); *accord In re Payment Card Interchange Fee*

5    *& Merch. Disc. Antitrust Litig.*, 2006 WL 2038650, at *3 (appointing three firms as interim co-lead

6    counsel, and noting "I do not agree that placing leadership responsibility in the hands of a group is

7    inevitably worse than appointing a sole leader"). Indeed, while Tesla *faults* Plaintiffs' counsel for

8    "working together" and planning to "'coordinate' on upcoming tasks," which it cites as evidence that

9    a co-leadership structure would cause inefficiencies (Opp. at 6), courts tend to *encourage* cooperation

10   between counsel and cite collaborative efforts as reasons *in favor of* appointing multiple firms as

11   interim co-leads. *See, e.g., Bartling*, 2018 WL 4804735, at *2 (noting that the three law firms selected

12   for appointment "appear to have cooperated with one another [in terms of case investigation and

13   analysis], and appear to be able and willing to work well together."); *J.S.X.*, 330 F.R.D. at 218

14   (appointing three law firms as interim co-leads over similar objections about inefficiency, and noting

15   that the three firms had worked cooperatively while pursuing their clients' cases).

16          Further, Tesla cites nothing to suggest that Proposed Interim Lead Counsel's collaborative

17   actions have led to inefficiencies or delay. In fact, it has been the opposite. And seeing how

18   cohesively and efficiently Plaintiffs' counsel have operated together it is not surprising that Tesla is

19   now trying to drive a wedge between the Plaintiffs' firms because it is to Tesla's advantage to do so.

20   Proposed Interim Lead Counsel have allocated tasks and responsibilities among themselves and have

21   immediately and consistently responded to every request or issue made or raised by Tesla or the

22   Court with a unified voice since at least June of this year.[2] That includes everything from

23   participating in teleconferences, to composing expedited demands to Tesla for documents and

24

_____

25   [2]      For the sake of clarity, none of the three proposed leads or their law firms coordinated or
     otherwise were working with each other on these matters prior to filing their respective complaints.
26   Instead, the coordination began once they recognized that each group intended to separately litigate
     these overlapping cases. In other words, rather than create further delay through an adversarial
27   process for determining lead counsel, they sought to inject more efficiency in the proceedings by
     working cooperatively with each other. Again, in contrast to Tesla's characterizations.
28

information, to drafting, editing and finalizing substantive documents and pleadings in a timely

manner, to assigning responsibility for drafting the Rule 26(f) Report and the instant motion as well

as the upcoming Consolidated Amended Complaint, to gathering information from putative class

members around the country, to exploring potential mediators. To be sure, Plaintiffs' counsel should

be lauded for self-organizing, allocating tasks, and electing to work cooperatively and with an agreed

leadership structure to *avoid* the jockeying and inefficiencies attendant to a contested fee petition.

(Mot. at 14); *see Roe v. Arch Coal, Inc.*, No. 4:15-CV-1026 (SNLJ), 2015 WL 6702288, at *3 (E.D.

Mo. Nov. 2, 2015) (appointing agreed firms as co-lead counsel where, *inter alia*, non-agreement

would have resulted in leadership fight). Tesla cannot point to a single instance of delay on Plaintiffs'

part or unnecessary duplication of efforts.[3] Its concerns in this regard are theoretical, at best, and

certainly are not in the best interests of the Plaintiffs and the putative class members.

Finally, despite Tesla's self-serving conclusions to the contrary, there is still much work to be

done in this litigation. So far as the undersigned can tell, Tesla's remedial measures have amounted to

sending an email blast notifying putative class members, in vague terms, that they can expect new

price sheets in the coming months which will revert their contracts to the original prices.

Nevertheless, class members are reporting conflicting and inconsistent messaging from Tesla and

have well-founded doubts about whether Tesla will provide the solar roof systems the parties

originally negotiated, and within a defined period of time. Class members who wish to proceed with

their installation plans apparently are forced to enter new contracts altogether (ostensibly with

additional, unspecified, terms), with no guaranteed installation dates, and in many instances have

---

[3] Indeed, since June, Ms. Rapp and Mr. Muhic (joined by Mr. Berger in August) and their teams have diligently communicated with Tesla's counsel about the various issues in the case, and have always done so with a consistent and unified message. Tesla has struggled to keep Plaintiffs' pace. By way of example, Tesla has failed for months to respond to requests for information both big and small—e.g., basic information about its positions in the litigation, any details of its purported new pricing plans, and (for months until the Court's recent order) its views on specific mediators and dates for proceeding with a mediation (despite its professed desire to do so). To be clear, the fact that Tesla has been slow (or failed) to respond on various issues while seeking lengthy extensions of its deadlines—standing alone—is not dramatically outside the norm in this type of litigation. The fact that Tesla and its counsel are conducting the litigation in that way on their side, while baselessly chiding Plaintiffs for inefficiencies is quite surprising and, to say the least, disappointing.

1  been informed by Tesla's employees that they will need to upgrade their projects, at further cost,

2  resulting in further increased prices.[4] In other instances, Tesla appears to have exaggerated the value

3  of expected tax credits, further confusing class members about the actual price of their solar roofs

4  under their reverted price terms. In other words, the challenges that Tesla appears to be facing in

5  organizing its operations and providing timely and accurate answers to Plaintiffs' questions, among

6  other things, point to the fact that this litigation is far from its end and that Plaintiffs and the putative

7  class need forceful advocates to protect their interests. Meanwhile, the fact that Plaintiffs' counsel

8  have been able to work quickly and cooperatively to obtain this material information from the class

9  (with little to no assistance from Tesla) further highlights the effectiveness of the proposed leadership

10  group.

11      In short, Tesla identifies no reason why Plaintiffs' recommended structure should not be

12  approved, *see In re Crude Oil Commodity Futures Litig.*, No. 11 Civ. 3600(WHP), 2012 WL 569195,

13  at *2 (S.D.N.Y. Feb. 14, 2012) ("[T]he Court gives some weight to plaintiffs' 'self selection' of class

14  counsel."), or why *its* preference to face the resources of one—rather than three—plaintiff firms

15  should be adopted instead, *see In re Organogenesis Sec. Litig.*, 241 F.R.D. 397, 410–11 (D. Mass.

16  2007) (recognizing that when opposing the appointment of class counsel, a defendant is "playing the

17  role of the proverbial fox guarding the henhouse").

18      A final note: Proposed Interim Lead Counsel do recognize that, under many appointed

19  leadership structures (whether one, two, or more attorneys are appointed to lead and/or committee

20  positions), consolidated class action cases can and do run into management issues. (Opp. at 6.) But as

21  evidenced by the many cases cited herein, the three-attorney appointment proposed here is hardly so

22  unwieldy as to guarantee such results, as Tesla suggests. Indeed, at least one court has noted that a

23  trio of appointees has advantages over a two-attorney structure, given that disagreements within an

24  odd-numbered leadership slate will avoid stalemates. *In re Navistar*, 2015 WL 1216318, at *1. In any

25  event, if Tesla truly harbors concerns about runaway billing, it can raise them in response to a fee

---

[4]      For instance, several class members have identified mistakes or mismeasurements in Tesla's original design for the customer's home—such as miscalculations related to the number of solar tiles or powerwalls needed to obtain the energy savings that Tesla originally promised. And Tesla still appears to be saddling its customers with the cost of correcting the company's mistakes.

petition. *J.S.X.*, 330 F.R.D. at 218 ("The Court understands Defendants' concerns that three law firms will generate an unreasonable fee request. However, the Court believes the proper time for Defendants to raise that concern is if and when class counsel seek attorney's fees and costs under Rule 23(h)."). Plaintiffs are keenly aware of the Court's specific concern over this issue. *See In re Anthem, Inc. Data Breach Litig.*, No. 15-MD-02617-LHK, 2018 WL 11195115, at *2-3 (N.D. Cal. Feb. 2, 2018) (Koh, J.) (appointing special master to evaluate reasonableness of fee request). Thus, Proposed Interim Counsel will closely monitor assignments, avoid any duplicated efforts, require contemporaneous timekeeping, and take whatever other steps are required to ensure that these cases are litigated efficiently, as they have successfully done thus far in these cases. Should the Court prefer such duties to be expressly stated in an appointment order (similar to the protocols expressed in *In re Qualcomm Antitrust Litig.*, 2017 WL 2222531, at *1), the undersigned are happy to provide a revised one for the Court's consideration.

## CONCLUSION

For all the reasons discussed here and in their opening Motion and supporting memorandum, Plaintiffs respectfully request that the Court enter an order appointing Eve-Lynn Rapp of Edelson PC, Peter A. Muhic of LeVan Muhic Stapleton LLC, and Justin T. Berger of Cotchett, Pitre & McCarthy, LLP as Interim Lead Counsel.

Respectfully submitted,

| | |
|---|---|
| Dated: October 12, 2021 | By: /s/ Eve-Lynn J. Rapp |
| | Rafey S. Balabanian (SBN 315962) |
| | rbalabanian@edelson.com |
| | Lily E. Hough (SBN 315277) |
| | lhough@edelson.com |
| | **EDELSON PC** |
| | 150 California Street, 18th Floor |
| | San Francisco, California 94111 |
| | Tel: 415.212.9300 |
| | Fax: 415.373.9435 |

Eve-Lynn J. Rapp (admitted *pro hac vice*)
erapp@edelson.com
**EDELSON PC**
2101 Pearl Street
Boulder, Colorado 80302
Tel: 720.741.0076
Fax: 720.741.0081

Attorneys for *Amans* Plaintiff

Dated: October 12, 2021

By: /s/ Peter A. Muhic

Tina Wolfson (SBN 174806)
Robert Ahdoot (SBN 172098)
**AHDOOT & WOLFSON, PC**
2600 West Olive Avenue, Suite 500
Burbank, CA 91505
Telephone: (310) 474-9111
Facsimile: (310) 474-8585
twolfson@ahdootwolfson.com
rahdoot@ahdootwolfson.com

Peter A. Muhic (*pro hac vice* to be filed)
**LeVAN MUHIC STAPLETON LLC**
One Liberty Place
1650 Market Street, Suite 3600
Philadelphia, PA 19103
Telephone: (215) 561-1500
pmuhic@levanmuhic.com

Edwin J. Kilpela, Jr. (*pro hac vice* to be filed)
**CARLSON LYNCH LLP**
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222
Telephone: (412) 322-9243
Facsimile: (412) 231-0246
ekilpela@carlsonlynch.com

Attorneys for *Kim* Plaintiffs

Dated: October 12, 2021

By: /s/ Justin T. Berger

Justin T. Berger (SBN 250346)
jberger@cpmlegal.com
Sarvenaz "Nazy" J. Fahimi (SBN 226148)
sfahimi@cpmlegal.com
**COTCHETT, PITRE & McCARTHY, LLP**

| | San Francisco Airport Office Center 840 Malcolm Road Burlingame, CA 94010 Telephone: (650) 697-6000 Facsimile: (650) 697-0577 Attorneys for *Malek* Plaintiff |
|---|---|

1

**ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1(i)(3)**

2      I, Eve-Lynn J. Rapp, attest that concurrence in the filing of this document has been obtained

3  from the other signatories. I declare under penalty of perjury that the foregoing is true and correct.

4

5      Executed this 12th day of October, 2021 at Boulder, Colorado.

6

7                                          /s/ Eve-Lynn J. Rapp_____

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28