Eve-Lynn J. Rapp (SBN 342892)
erapp@edelson.com
**Edelson PC**
2101 Pearl Street
Boulder, Colorado 80302
Tel: 720.741.0084
Fax: 720.741.0081

*Interim Lead Class Counsel*

*Additional Counsel Listed on Signature Page*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| **MATTHEW AMANS** and **BABAK MALEK**, individually and on behalf of all similarly situated individuals,<br><br>Plaintiffs,<br><br>v.<br><br>**TESLA, INC**., a Delaware corporation,<br><br>Defendant. | **Case No. 3:21-CV-03577-VC**<br>Case No. 3:21-CV-03681-VC<br>Case No. 3:21-CV-05528-VC<br><br>**CONSOLIDATED CLASS ACTION COMPLAINT**<br><br>1) Breach of Contract,<br><br>2) Cal. Bus. & Prof. Code § 17200 *et seq*.,<br><br>3) Cal. Bus. & Prof. Code § 7160,<br><br>4) Cal. Civ. Code. §§ 1750 *et seq*., and<br><br>5) 15 U.S.C. § 1601 *et seq.* |

## <u>CONSOLIDATED CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL</u>

Plaintiffs Matthew Amans and Babek Malek bring this Class Action Complaint and Demand for Jury Trial against Tesla, Inc. ("Tesla") for its unfair and deceptive practices in marketing and selling its solar roof product (referred to herein as the "Solar Roof"). Plaintiffs, for their Complaint, allege as follows upon personal knowledge as to themselves and their own acts and experiences, and as to all other matters, upon information and belief, including investigation conducted by their attorneys.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## NATURE OF THE ACTION

1.      Defendant Tesla, Inc. ("Tesla") is a manufacturer and seller of electric vehicles and, more recently, solar panels and battery backup units.

2.      Tesla's solar energy business emerged after Tesla's multi-billion-dollar acquisition of a heavily indebted solar panel company called SolarCity, which was co-founded by Elon Musk and his cousins. SolarCity was on the brink of collapse when Musk, as CEO of Tesla and a chairman of SolarCity, orchestrated a merger with Tesla in an effort to save the solar panel business (and his own multi-million-dollar investment in it).

3.      In order to persuade Tesla's investors to approve the controversial acquisition, Musk revealed a new product in October 2016—on the set of the television series *Desperate Housewives*—called the Solar Roof. Musk told analysts that Tesla's acquisition of SolarCity and its Solar Roof would create a "huge market" for the combined companies. The merger would ostensibly allow Tesla to sell consumers the entire solar energy solution: generation (solar panels), storage (batteries), and transportation (electric cars).

4.      The Solar Roof promised novel and enticing solar energy solutions for homeowners. Unlike traditional boxy solar panels that sit atop a roof, the Solar Roof was designed to make the roof itself solar powered. The product comprises individual roof tiles with integrated photovoltaic (PV) solar cells capable of generating energy, while having the appearance of a traditional roof. During the product's reveal, Musk touted the Solar Roof as more durable than a traditional roof and a more affordable energy solution for homeowners.

5.      However, the technology behind the Solar Roof was far from complete at the time Musk revealed the product. The Solar Roof that Musk showcased to investors at the October 2016 event was in fact made entirely of non-functional "dummies," according to engineers familiar with it. Some even referred to the event as "vaporware." Thus, when the Solar Roof entered the market shortly thereafter, its technology was subprime, and it continued to disappoint in the years that followed.

6.      Tesla continued to revise the Solar Roof's technology and, while still struggling to turn a profit after its SolarCity acquisition, the company released a "Version 3" of the Solar Roof

(the now-current version) in late 2019. The newest version of the Solar Roof promised several improvements over the previous versions including faster installation times and lower costs. Consumers wishing to purchase a Solar Roof, including Plaintiffs and the Classes (defined below), pre-ordered the product, agreed to a total project cost (based on their unique installation and roof requirements), paid a deposit, and prepared their properties for installation.

7.     Unfortunately, after finalizing its purchase and installation agreements with customers who ordered the newest Solar Roof, Tesla delayed performance beyond the timeframe promised, switched certain materials without consent, and in April 2021 advised customers that Tesla would not honor their contracts unless they agreed to a substantial price increase—in some instances just days before the customer's scheduled installation. Tesla's price increases substantially, materially, and unilaterally changed the terms of the parties' purchase agreements and represented as much as a 100% increase for many consumers, amounting to tens of thousands of dollars of additional, not bargained-for, and unanticipated costs.

8.     Tesla's behavior in marketing and selling the Solar Roofs is a textbook bait and switch scheme. The company lured in consumers with promises of stylish, affordable solar energy solutions with predictable installation times and costs, but then sought to hold its customers hostage with unjustified and unlawful price increases and delays.

9.     Following Tesla's announcement in April 2021 that it would not honor its contracts, any consumers who wanted to move forward with the Solar Roof installation in which they had already invested considerable time and money had to agree to pay above and beyond the price they originally agreed to, as there is no alternative or comparable product on the market.

10.     Plaintiffs filed suit within weeks of Tesla's price increase to hold Tesla accountable for its deceptive, unlawful, and unjust conduct and to compel compliance with the terms of its executed contracts.

11.     In or around early September 2021, Tesla suddenly reversed course and represented that it would honor its contract pricing agreed to prior to the April 2021 price increase and would refund any increased payments already made. However, Tesla has not agreed to honor the installation dates long-ago promised, and even more troubling, it has continued to deceptively

increase pricing (contrary to its representations) and impose new and/or additional charges on customers, on top of its previously agreed-to prices. In other words, Tesla's alleged promise to remedy the price hikes underlying this lawsuit appears to be yet another bait and switch scheme.

## PARTIES

12.     Plaintiff Matthew Amans is an adult individual and at all times relevant has been a citizen and resident of California.

13.     Plaintiff Babak Malek is an adult individual and at all times relevant has been a citizen and resident of California.

14.     Defendant Tesla, Inc., is a corporation organized and existing under the laws of Delaware with its principal place of business located at 3500 Deer Creek Road, Palo Alto, California 94304.

## JURISDICTION AND VENUE

15.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2), because (i) at least one member of the Class is a citizen of a different state than Defendant, (ii) the amount in controversy exceeds $5,000,000, exclusive of interests and costs, and (iii) none of the exceptions under that subsection apply to this action. Specifically, Tesla marketed and entered into agreements for its Solar Roof with customers in various states across the country, including but not limited to, Arizona, California, Florida, Massachusetts, Maryland, New Jersey, New York, Pennsylvania, and Oregon.

16.     This Court has personal jurisdiction over Defendant because Defendant conducts substantial business in California and has its principal place of business and headquarters in California and this District.

17.     Venue is proper pursuant to 28 U.S.C. § 1391(b) because Defendant maintains its headquarters and conducts significant business in this District.

## COMMON FACTUAL ALLEGATIONS

### Overview of the Tesla Solar Roof

18.     Tesla currently offers for sale two solar products: traditional solar panels which are installed *on top of* existing roofs, and the Solar Roof which *replaces* the entire existing roof. The

Solar Roof is a relatively new technology and consists of roof tiles with embedded photovoltaic (PV) cells capable of generating electricity from the sun.

19.     This new technology promises several new benefits to homeowners.

20.     First, unlike traditional rectangular solar panels which protrude from the roof, Solar Roof tiles seamlessly integrate into the consumer's roof and thus are more aesthetically pleasing for homeowners. *See* Figure 1.



**(Figure 1)**

21.     Tesla touts this aesthetic benefit on its website: "Replace your current roof with Solar Roof and power your home with a fully integrated solar system. With a seamless design, each tile looks great up-close or from the street, complementing your home's architecture." As Elon Musk stated, "[w]hen you have [the Solar Roof] installed on your house, you'll have the best roof in the neighborhood. The aesthetics are that good."

22.     Additionally, according to Tesla, the Solar Roof promises to be more durable than a standard roofing tile. On its website Tesla explains, "Solar Roof tiles are more than three times stronger than standard roofing tiles and are engineered for all-weather protection. With a 25-year warranty, Solar Roof lasts longer than an average roof and protects your home for decades to come."

23.     Another significant benefit that the Solar Roof promises over traditional solar panels is the reduced maintenance associated with the underlying roof. Traditional solar panels may outlast

the underlying roof, and thus homeowners must disassemble and re-install an existing solar system in order to address any replacement or repairs needed for the underlying roof. Alternatively, some roofs may have to be entirely replaced before installing a traditional solar panel system, depending on their condition.

24. Tesla also advertises the affordability of the Solar Roof as one of its key features. On its website, Tesla claims that the price of the Solar Roof is cheaper than purchasing electricity from the power grid: "Power your home at the lowest price per watt of any national provider and take control of your monthly electricity bill." Indeed, Musk drew public attention to the affordability of the Solar Roof by stating, "It's looking quite promising that a solar roof will actually cost less than a normal roof before you even take the value of electricity into account. So the basic proposition would be, 'Would you like a roof that looks better than a normal roof, lasts twice as long, costs less and by the way generates electricity?' It's like, why would you get anything else?"

25. Tesla also markets the Solar Roof as being environmentally friendly. Tesla tells consumers they can reduce their carbon footprint with the Solar Roof: "By switching to solar, you will be reducing your carbon emissions and environmental impact of energy use."

26. On its website, Tesla also campaigned against the bad experience of buying a traditional roof, which it compared to "buying a car through a dealership," in which "[i]nitial contracts tend to be overly optimistic, and later customers face hidden costs that were never mentioned up front." Tesla promised "transparency and putting the customer in control," which it purportedly accomplished through its "Solar Roof calculator" that "lets homeowners estimate the upfront price of the Solar Roof…"

27. By advertising these features, Tesla has attracted considerable consumer interest in its Solar Roof, particularly with consumers building or remodeling a home, or already planning to replace their existing roof.

28. The purchase of a Solar Roof takes place in several steps. Tesla first provides consumers with an early quote for the estimated price of the consumer's Solar Roof project, which ostensibly comprises the price of the Solar Roof (per estimated square foot) and standard installation costs; then, after exploring the homeowner's unique project needs, Tesla offers a

1 │ "contract price" which includes the price of the Solar Roof system (per custom square foot

2 │ measurements), standard installation costs, and the customer's unique pre-construction needs.

3 │      29.    Consumers initiate the transaction by visiting Tesla's website and providing Tesla

4 │ with their address and current electricity usage. In "Step 1," Tesla performs calculations that

5 │ measure the consumer's roof and provides a suggested size based on the consumer's electricity

6 │ consumption and roof size. In advertising these services, Tesla promises to "recommend a system

7 │ that maximizes your savings based on your average electricity usage." *See* Figure 2.



**(Figure 2)**

21 │      30.    After Step 1, Tesla provides consumers with an estimated price for the Solar Roof

22 │ based on its initial measurements, along with an option to place a pre-order by paying a deposit.

23 │ Tesla intentionally advertises a lower estimated price at this early phase than what the company

24 │ reasonably expects the consumer to pay on the final project in order to lure consumers into making

25 │ a deposit and begin the project.

26 │      31.    In Step 2 of the process, Tesla offers its "Design" and "Site Visit" services. In the

27 │ "Design" phase, a Tesla technical team manually reviews satellite images of the consumer's roof

28 │ and creates a schematic of the solar installation (showing the placement of the solar tiles and their

size). *See* <u>Figures 2-3.</u> In the "Site Visit" phase, a Tesla representative conducts an in-person inspection of the consumer's roof. In advertising these services, Tesla explains that, "[p]rior to installation, we perform a site visit to confirm no additional roof or site repairs are required." *See* <u>Figure 2.</u>



**(<u>Figure 3</u>)**

32.     According to Tesla's advertisements, the purpose of Step 2 is to identify any anomalies or unique shapes in a customer's roof and to recommend an appropriate size of the solar array (in other words, the amount of electricity, in kilowatt hours, the Solar Roof can generate on an average day). Upon review of their project design and customized measurements, customers finalize their purchase by signing a "Solar Roof Purchase & Home Improvement Agreement" (the "Solar Roof Purchase Agreement"). The Solar Roof Purchase Agreement contains a consumer's Solar Roof project specifications determined during the review phase (including the size of the Solar Roof and pre-construction needs) and a contract price, based on those specifications.

33.     Tesla complements this process with an in-person site visit. The purpose of the in-person site visit is to detect any unique repairs needed at the installation location which may not have been readily apparent from satellite images.

34.     Consumers reasonably rely on Tesla's representations that the review phase enables Tesla to determine the appropriate size and scope of the project and to identify any anomalies in the project site which may increase the project's total cost. Because the Solar Roof Purchase Agreement is entered into at or near the conclusion of Tesla's review phase, customers reasonably rely on the contract price to be the final, or nearly final, price for their entire Solar Roof project.

***Tesla Unilaterally and Without Justification Increased the Price of the Solar Roof***

35.     On or around April 10, 2021, Tesla sent consumers who pre-ordered a Tesla Solar Roof an email indicating that it increased the Solar Roof prices and would no longer honor consumers' contracts (the "Price Increase Notice"). The email stated:

> We have increased the price of Solar Roof and have added adjustments for individual roof complexity. Learn More
>
> You will receive an email in the next 1-2 days when your new agreement is ready for your review and acceptance before moving forward. If you are no longer interested in moving forward with Solar Roof, you can cancel your order by logging into your Tesla Account and your deposit will automatically be refunded.
>
> We will be prioritizing customers based on the order in which they accept their updated agreements.

36.     Consumers who received the April 10th email had already signed a contract and agreed to a final price for the entire Solar Roof installation. These consumers had bargained for performance, paid deposits, and were waiting for their installations.

37.     In anticipation of the Solar Roof installation (and as instructed by Tesla), many consumers had spent thousands of dollars to make accommodations and alterations to their property, such as trimming trees to reduce shade on their roof, reenforcing their roof structure in anticipation of the increased weight, and converting their power meters as required by their utility company. Many consumers had also already begun to obtain financing for their Solar Roof, such as by taking out home equity loans.

38.     Tesla's Price Increase Notice imposed significant and material changes to the existing project costs. Consumers have reported price hikes that range from 30% up to (and even exceeding) 100% of the previous agreed-upon price.

39.     For instance, the publication *Electrek* interviewed one consumer who entered into a contract for a Solar Roof system at a total price of $77,019.22, signed a loan agreement for that amount, and spent $5,000 on home improvement preparations.[1] On April 10, 2021, Tesla increased that consumer's system price to $118,870.33—*over $41,000 beyond the original contract price.*

40.     Another consumer told the publication *The Verge* that "he signed a contract in February to install the solar roof for $35,000, with an additional $30,000 for the batteries. Later, he received a 'terse email' from Tesla stating that in several days he would receive a new contract with higher prices. He was then told he now owed $75,000 for the solar roof — *a 114 percent increase* — and $35,000 for the batteries."[2]

41.     In many instances, the Price Increase Notice came just days or weeks before consumers' scheduled installations. Consumers were left with two options: 1) either pay Tesla for the massive price hike, or 2) cancel their project, in which they have already invested significant time and money.

42.     Even worse, in the Price Increase Notice, Tesla implied that the company would delay the installation of the project if the consumer did not accept the new terms—and the massive price hike—right away. ("We will be prioritizing customers based on the order in which they accept their updated agreements.") Many Solar Roof pre-order customers waited months and even a year or more for their installation only to have Tesla threaten them with further delays if they did not agree to Tesla's unilateral new terms.

43.     At all times, Tesla has known and understood that it lacks any real competition and that its customers lack any alternatives to complete their Solar Roof projects.

44.     Before the company issued the Price Increase Notices, Musk revealed that the company made "significant mistakes" in its Solar Roof business. In a conference call with investors, Musk said Tesla had run into trouble "assessing the difficulty of certain roofs," and said that the

---

[1]     James Dow, *Tesla hikes solar roof price on contracts signed over a year ago*, ELECTREK, (Apr. 11, 2021), https://bit.ly/3tGAgdR.

[2]     Andrew J. Hawkins, *Tesla is burning its solar roof customers with a huge price increase*, THE VERGE (Apr. 12, 2021), https://bit.ly/2RIVlah.

"complexity of roofs varies dramatically." Musk also admitted that Tesla's solar energy division is still not profitable. Tesla's solution was to retroactively apply a new base pricing model to all of its already-signed contracts.

45.     In or around September 2021 and in response to the filing of Plaintiffs' original class action complaints, Tesla again announced new prices for Plaintiffs and the Class Members' Solar Roofs. While Tesla made oral representations that it was reverting the prices for the Class Members back to the original contract prices (i.e., pre-April 2021 Price Increase), it has not done so uniformly or accurately, and continues to fleece customers with updates to project designs (which require higher material and labor costs) and allegedly unforeseen repairs (at further additional cost). Moreover, Tesla has failed to compensate Plaintiffs or the Class Members for damages incurred while Tesla delayed performance, both in terms of time and/or money.

46.     Plaintiffs and the Classes seek to enforce their contracts with Tesla for their previously agreed-upon prices of the Solar Roof installation, enjoin Tesla from continuing its unfair, deceptive and/or unlawful practices, and for other relief as allowable under the law.

**FACTS SPECIFIC TO PLAINTIFFS**

47.     Plaintiffs both entered contracts with Tesla for the purchase of a Solar Roof. For Plaintiffs, and consumers nationwide, this was a months-long process.

**Plaintiff Amans**

48.     Plaintiff Amans pre-ordered a Solar Roof and battery backup units from Tesla in June 2020.

49.     After Tesla representatives inspected Amans' roof by using satellite images and conducted an in-person site visit, Amans signed a final Solar Roof Purchase Agreement on March 20, 2021 for the total amount of $71,074.42, which included $54,035.69 for the Solar Roof; the remainder of the contract price comprised of accessories and pre-construction costs.

50.     In anticipation of the Tesla Solar Roof installation, Amans made changes to his home. For instance, he converted his electrical plan to accommodate solar—which resulted in a higher utility bill without an installed Solar Roof. He also paid for landscaping repairs to limit shade to the roof (to optimize the anticipated Solar Roof), such as having trees trimmed and removed.

Amans did not install a new roof on his home that needed a replacement and he refrained from

upgrading his home's windows and skylights due to his anticipated Solar Roof installation.

51.     On April 10, 2021—almost 9 months after pre-ordering the Solar Roof—Amans

received a Price Increase Notice from Tesla. Subsequently, Tesla sent Amans a revised Solar Roof

Purchase Agreement in the amount of $146,462.22, *an increase of 106%.* Tesla did not make any

adjustments to the accessory needs or pre-construction costs, but rather increased the price of the

Solar Roof product from $54,035.69 to $122,404.46.

52.     Amans did not accept Tesla's price increase and wishes for Tesla to honor its agreed-

upon price of $71,074.42. Amans also wishes for Tesla to compensate him for any landscaping

repairs that will have to be re-done due to the delayed installation and his higher utility bills (due to

his conversion of his electrical plan to accommodate his solar) during the months when he

reasonably expected to have the Solar Roof installed.

**Plaintiff Malek**

53.      At the recommendation of his sister, who was a Tesla customer, Plaintiff Babak

Malek signed a contract with Tesla for the purchase and installation of a solar roof system for his

residence in West Hills, California in November 2020. Plaintiff Malek put down $100 to secure the

project.

54.     After Tesla completed a more thorough design, Plaintiff Malek signed an adjusted

contract on January 23, 2021. The contract price for his 18.48 kilowatt solar roof system, covering

3615.409 square feet, was $64,735 (approximately $3,500 per kilowatt). The contract provided that

Plaintiff Malek could cancel the contract within five business days of January 24, 2021. Plaintiff

Malek did not exercise this option.

55.     The adjusted contract stated that installation would commence between one week

and six months from January 23, 2021. In March 2021, two technicians representing Tesla inspected

Plaintiff Malek's roof and told him that installation would begin within weeks.

56.     In April 2021, Plaintiff Malek's project was designated as in the "permitting" stage

on the Tesla website.

57.     On April 10, 2021, along with other Tesla customers, Plaintiff Malek received an email from Tesla requiring that he approve and sign a new contract. On the Tesla website, Plaintiff Malek's new contract showed his total cost as $91,400—an increase of over 40% above his January 2021 contract price. The website showed Plaintiff Malek's project as back to the "review and accept design" stage.

58.     Plaintiff Malek made several attempts to contact project advisors at Tesla to no avail. He finally was able to make contact with one advisor, who gave no explanation for the change in the contract price other than that it was a "corporate decision." Since first contacting Tesla in November 2020 for construction of a solar roof, Tesla changed advisors on Plaintiff Malek's project five (5) times, further causing delays and breakdown in communications.

59.     Plaintiff Malek sent several email inquiries to Tesla to follow up on his contract. Upon reading several news articles in spring 2021, Plaintiff Malek discovered that the sudden increase in price and delays in installation was happening to all other existing customers.

60.     On June 25, 2021, Tesla provided yet another amended sales contract. This contract, for the same roof and kilowatt output had increased several thousand dollars, to $95,107. As with prior contracts, this contract stated that installation would begin in approximately one week to six months from contract signing, providing no acknowledgment that Plaintiff Malek had already been waiting several months for installation.

61.     Because of the price increase, Plaintiff Malek decided to finance part of the purchase directly with Tesla.

62.     In July 2021, Tesla notified Plaintiff Malek that his utility provider was limiting the size of his solar roof to no more than 16.25 kilowatts. Based on this decreased output, Tesla amended the total price to $90,367.44—still much higher than the January 2021 contract price, and over $5,560 per kilowatt.

63.     Subsequently, in accordance with its purported reversion to the pre-2021 pricing, Tesla changed the price of Plaintiff Malek's solar roof installation to $74,934 for 16 kilowatts ($4,683 per kilowatt), which is still significantly more than his original price of $64,735.00 for 18.5 kilowatts.

64.     Plaintiff Malek's residence is considered average in shape/size for his community. Despite the typicality of his residence, Defendant Tesla has changed the price and timeline of installation several times. Due to Tesla's price changes and associated delays, Plaintiff Malek incurred significant additional damages, including many months of increased utility bills, roof leaks and water damage from winter storms, and redundant site preparation costs.

65.     After over a year of delay, Tesla has now installed Plaintiff Malek's solar roof, with less power and for over $10,000 more than the original contract promised.

## CLASS ALLEGATIONS

66.     **Class Definition:** Plaintiffs bring this action pursuant to Federal Rule of Civil Procedure 23(b)(2) and Rule 23(b)(3) on behalf of themselves and a Class of similarly situated individuals defined as follows:

> **Nationwide Class:** All persons with whom Tesla entered into a contract for the purchase and/or installation of a Solar Roof and/or Powerwall energy storage system in the United States and whom Tesla notified, on or after April 1, 2021, would be required to pay an increased price as a condition for performance (the "Class").
>
> **TILA Subclass**: All persons in the Class who financed all or part of the Solar Roof directly with Tesla.

The following people are excluded from the Class and Subclass (collectively, the "Classes"): (1) any Judge or Magistrate presiding over this action and the members of their family; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and their current or former employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Classes; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiffs' counsel and Defendant's counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

67.     **Numerosity**: The exact number of members of the Classes is unknown and is not available to Plaintiffs at this time, but individual joinder in this case is impracticable. The Classes likely consist of thousands of individuals. Members of the Classes can be easily identified through Defendant's records.

68.    **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiffs and the other members of the Classes, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Classes include but are not limited to the following:

a.    Whether Defendant breached its contract;

b.    Whether Defendant violated Cal. Bus. & Prof. Code & §§ 17200 *et seq.*;

c.    Whether Defendant violated Cal. Bus. & Prof. Code § 7160; and

d.    Whether Defendant violated 15 U.S.C. §§ 1601 *et seq*.

69.    **Typicality:** Plaintiffs' claims are typical of other members of the Classes, in that Plaintiffs and the members of the Classes sustained damages arising out of Defendant's uniform wrongful conduct.

70.    **Adequate Representation**: Plaintiffs will fairly and adequately represent and protect the interests of the Classes and have retained counsel competent and experienced in complex class actions. Plaintiffs have no interest antagonistic to those of the Classes, and Defendant has no defenses unique to Plaintiffs.

71.    **Policies Generally Applicable to the Classes**: This class action is appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the Classes as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Classes, and making final injunctive relief appropriate with respect to the Classes as a whole. Defendant's policies challenged herein apply and affect members of the Classes uniformly and Plaintiffs' challenge of these policies hinges on Defendant's conduct with respect to the Classes as a whole, not on facts or laws applicable only to Plaintiffs. Plaintiffs and the members of the Classes have suffered harm and damages as a result of Defendant's unlawful and wrongful conduct.

72.    **Superiority**: This case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy because joinder of all parties is impracticable. The damages suffered by the individual members of the Classes will likely be relatively small, especially given the burden and expense of

1 | individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would

2 | be virtually impossible for the individual members of the Classes to obtain effective relief from

3 | Defendant's misconduct. Even if members of the Classes could sustain such individual litigation, it

4 | would still not be preferable to a class action because individual litigation would increase the delay

5 | and expense to all parties due to the complex legal and factual controversies presented in this

6 | Complaint. By contrast, a class action presents far fewer management difficulties and provides the

7 | benefits of single adjudication, economies of scale, and comprehensive supervision by a single

8 | Court. Economies of time, effort, and expense will be fostered and uniformity of decisions ensured.

9 | 73.    Plaintiffs reserve the right to revise the foregoing "Class Allegations" and "Class

10 | Definitions" based on facts learned through additional investigation and in discovery.

**FIRST CAUSE OF ACTION**
**Breach of Contract**
**(On Behalf of Plaintiffs and the Nationwide Class)**

13 | 74.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

14 | 75.    Plaintiffs and the Nationwide Class entered into a valid contract with Defendant for

15 | the purchase and installation of the Solar Roof and other accessories. Most importantly, Plaintiffs

16 | and the Nationwide Class agreed to a specific contract price for the purchase and installation of

17 | their Solar Roofs, and the timeframe for performance, and Defendant agreed that the contract price

18 | would only change if additional costs arose with respect to unforeseeable repairs needed to install

19 | the Solar Roof.

20 | 76.    Plaintiffs and the Nationwide Class paid a deposit to purchase the Solar Roofs and,

21 | in reliance on Defendant honoring the terms of the contracts, began to make preparations and/or

22 | alterations and accommodations to their properties in anticipation of the installation and/or incurred

23 | other costs and harms.

24 | 77.    Defendant breached its contracts with Plaintiffs and the Nationwide Class by

25 | increasing the price of the Solar Roofs and refusing to perform in the manner and timeframes

26 | promised in violation of the contract. Defendant also anticipatorily breached the contract by

27 | representing in the Price Increase Notice that it would not perform its contractual obligation to

28 |

1  install the Solar Roof unless and until Plaintiffs and the Nationwide Class accepted Defendant's

2  unilateral adjustment to the contract's terms.

3      78.     Plaintiffs and the Nationwide Class were damaged as a result of Defendant's breach

4  and anticipatory breach.

5      79.     Because no comparable products to the Solar Roof currently exist, there is no

6  adequate remedy for Plaintiffs and the Nationwide Class under the law. As such, Plaintiffs and the

7  Nationwide Class seek specific performance under the last-agreed-upon Solar Roof Purchase

8  Agreement that existed prior to the Price Increase Notice and/or for restitution in the amount of any

9  sums paid to Tesla above the last-agreed-upon Solar Roof Purchase Agreement that existed prior to

10  the Price Increase Notice and any actual damages incurred as a result of Defendant's misconduct.

11

12                        **SECOND CAUSE OF ACTION**
                **Violation of the California Unfair Competition Law**
                    **Cal. Bus. & Prof. Code §§ 17200 *et seq.***
13              **(On Behalf of Plaintiffs and the Nationwide Class)**

14      80.     Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

15      81.     California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et*

16  *seq.*, protects both consumers and competitors by promoting fair competition in commercial

17  markets for goods and services.

18      82.     The UCL prohibits any unlawful, unfair, or fraudulent business act or practice,

19  including the employment of any deception, fraud, false pretense, false promise, misrepresentation,

20  or concealment, suppression, or omission of any material fact. A business practice need only meet

21  one of the three criteria (unlawful, unfair, or fraudulent) to be considered a violation of the statute.

22      83.     Defendant's business practices are unlawful because, as detailed below, they

23  constitute numerous violations of the CLRA and Cal. Bus. & Prof. Code § 7160.

24      84.     Defendant's business practices are fraudulent because their representations about the

25  cost of the Solar Roof, the timeframe for installation, and the materials to be used, were likely to

26  deceive the general public and because Defendant falsely represented its services had characteristics

27  or were of a particular standard that they were not. The price of a consumer product and timeframe

28  for installation is a material term of a transaction because it directly affects a consumer's choice of,

or conduct regarding, whether to purchase a product; thus, any deception or fraud related to the price of a product or timeframe for performance is materially misleading. Defendant's fraudulent business practices include advertising deceptively low price estimates, misrepresenting the impact that its design and review services would have on the final project cost, misrepresenting the timeframe for performance and the materials to be used, raising the price of the Solar Roof at the eleventh hour (and demanding a new price inconsistent with its previous representations), and misrepresenting the nature of its Price Increase Notices as unanticipated project costs.

85.     Defendant's business practices are also unfair. A business act or practice is "unfair" under the UCL if the reasons, justifications and motives of the alleged wrongdoer are outweighed by the gravity of the harm to the alleged victims. A business act or practice is also "unfair" under the UCL if the conduct or practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers. Defendant has engaged in unfair business practices, specifically, by demanding increased payments and abandoning and/or significantly delaying Solar Roof projects where the customer refused to agree to Defendant's price hikes. This conduct is unfair because the injuries caused by it are not outweighed by any countervailing benefits to consumers or competition, and the injury is one that consumers themselves could not reasonably have avoided. Given the information asymmetry between Defendant and consumers regarding the true costs of the Solar Roof, Defendant knew or had reason to know that consumers could not have reasonably known or discovered the true cost of the Solar Roof when conducting any stage of the transaction, including signing their Solar Roof Purchase Agreement, and Defendant knew or had reason to know that consumers would be injured if Defendant abandoned their project.

86.     Defendant's fraudulent, unlawful, and unfair conduct occurred during the sale of a consumer product, and therefore occurred in the course of Defendant's business practices.

87.     Defendant's fraudulent, unlawful, and unfair conduct directly and proximately caused Plaintiffs and the Nationwide Class damages.

88.     But for Defendant's conduct as described herein, Plaintiffs and the Nationwide Class would not have purchased the Solar Roof or incurred any other costs associated with the anticipated installation of the Solar Roof.

89.     Pursuant to Cal. Bus. & Prof. Code § 17203, Plaintiffs seek an order requiring Defendant to cease the unfair practices described herein and to perform the Solar Roof installations, at the price it agreed to with Plaintiffs and the Nationwide Class and/or for restitution in the amount of any sums paid to Tesla above the last-agreed-upon Solar Roof Purchase Agreement that existed prior to the Price Increase Notice and any actual damages incurred as a result of Tesla's misconduct.

**THIRD CAUSE OF ACTION**
**Violation of Cal. Bus. & Prof. Code § 7160**
**(On Behalf of Plaintiffs and the Nationwide Class)**

90.     Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

91.     Plaintiffs and the Nationwide Class are a "Person" as defined by Cal. Bus. & Prof. Code § 7150.

92.     Defendant is a "solicitor" because it advertised, solicited, and induced Plaintiffs and the Nationwide Class to purchase a Solar Roof.

93.     Plaintiffs and the Nationwide Class entered into a Solar Purchase Agreement with Defendant to purchase and install the Tesla Solar Roof and other accessories. The Solar Purchase Agreement is an agreement to conduct home improvement work as it includes the installation of a new home improvement good and modernization of a roof on Plaintiffs' and the Nationwide Class's properties.

94.     Defendant induced Plaintiffs and the Nationwide Class to enter into a Solar Purchase Agreement by advertising false price estimates and installation dates, and deceptive design and review services purportedly designed to control project costs.

95.     Defendant agreed to a contract price in writing with Plaintiffs and the Nationwide Class and entered into the Solar Purchase Agreement, based on the outcome of Defendant's project review and design.

96.     Defendant knowingly made false statements about the true price of the Solar Roof and its installation, including the promised date of installation, and/or made false statements about the purpose and character of its design and review services.

97.     Defendant knew or should have known the true price of the Solar Roof and installation timeframes and costs. Given the information asymmetry between Defendant and

1    Plaintiff and the Nationwide Class regarding the true costs of the Solar Roof, Defendant knew or

2    had reason to know that Plaintiffs and the Nationwide Class could not have reasonably known or

3    discovered the falsity of Defendant's representations when signing their Solar Roof Purchase

4    Agreement.

5         98.    Plaintiffs and the Nationwide Class now seek damages, including statutory damages

6    and attorneys' fees, under Cal. Bus. & Prof. Code § 7160.

7

8    **FOURTH CAUSE OF ACTION**<br>**Violations of California's Consumer Legal Remedies Act**<br>**Cal. Civ. Code §§ 1750 *et seq.***<br>**(On Behalf of Plaintiffs and the Nationwide Class)**

9

10        99.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

11        100.    Plaintiffs bring this Count on behalf of the general public in the State of California

12   and/or for the primary benefit of the general public, and their benefit only incidentally as members

13   of the general public, to enjoin conduct injurious to the general public.

14        101.    The California Consumer Legal Remedies Act ("CLRA") sets forth a list of

15   prohibited "unfair or deceptive" practices in a "transaction" relating to the sale of "goods" or

16   "services" to a "consumer."

17        102.    The Legislature's intent in promulgating the CLRA is reflected in Section 1760,

18   which mandates that its terms are to be "liberally [c]onstrued and applied to promote its underlying

19   purposes, which are to protect consumers against unfair and deceptive business practices and to

20   provide efficient and economical procedures to secure such protection."

21        103.    Defendant's Solar Roof constitutes a "good" under Cal. Civ. Code § 1761(a) and its

22   design, review, and installation services constitute "services" under Cal. Civ. Code § 1761(b).

23        104.    Plaintiffs are a "consumer" under Cal. Civ. Code § 1761(d) and have suffered

24   damage as a result of the use or employment by Defendant of the methods, acts, or practices set

25   forth below, which are unlawful under Cal. Civ. Code § 1770(a).

26        105.    Plaintiffs, on behalf of the general public, request that the Court—to protect and

27   enforce important public rights and restrain conduct injurious to the general public—enter a

28

permanent injunction prohibiting Defendant, its agents, servants, employees, and all person acting in concert with it, from engaging in the following conduct with respect to the sale of the Solar Roof:

(a)     representing that Defendant's pre-purchase and pre-installation review services have the use or benefit of detecting additional or abnormal costs associated with the purchase of a Solar Roof, when they do not, in violation of Cal. Civ. Code § 1770(a)(5);

(b)     advertising to the general public that the Solar Roof will cost a certain amount with the intent to charge consumers more than that advertised amount, in violation of Cal. Civ. Code § 1770(a)(9);

(c)     representing that additional, unforeseen repair services are needed in order to install the Solar Roof, when they are not, in violation of Cal. Civ. Code § 1770(a)(15);

(d)     representing that Defendant will only change the contract price if additional repairs or installation-related work is needed, when it intends to change the price of the Solar Roof product itself, in violation of Cal. Civ. Code § 1770(a)(7) & (16);

(e)     misleading the public as to the true cost of the Solar Roofs by representing, without appropriate skill and knowledge, the tax benefits to be enjoyed; and/or

(f)     offering to enter into contractual relationships with the general public governed by unconscionable contract clauses, in violation of Cal. Civ. Code § 1770(a)(19).

106.   Defendant knew, or should have known, that its representations and advertisements about the quality of its pre-purchase review services and the total cost of its Solar Roof contracts were false or misleading.

107.   As a result of Defendant's unlawful conduct, Plaintiffs suffered economic damages as stated herein.

108.   Plaintiffs further request that the Court—to protect and enforce important public rights and prevent conduct injurious to the general public—enter a permanent injunction affirmatively compelling Defendant, its agents, servants, employees, and all persons acting in concert with it, to disseminate corrective advertising and/or other notice to the general public sufficient to accurately inform the general public about the true costs, terms, and characteristics of the Solar Roof.

109.    In addition to the public injunctive remedies set forth above, Plaintiffs also seek actual, punitive, and statutory damages pursuant to the CLRA and an award of attorneys' fees pursuant to the private attorney general doctrine, codified at Cal. Civ. Proc. Code § 1021.5, for enforcing important rights "affecting the public interest."

**FIFTH CAUSE OF ACTION**
**Violations of Truth in Lending Act**
**15 U.S.C. §§ 1601 *et seq.***
**(On Behalf of Plaintiff Malek and the TILA Subclass)**

110.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

111.    This cause of action is brought on behalf of Plaintiff Malek and a Subclass of individuals who have financed part of or all of their purchase for the Solar Roof through Tesla.

112.    At all relevant times herein, Tesla was engaged in a business that included providing financing for the purchase of Tesla products and services.

113.    Plaintiff Malek and the TILA Subclass are informed and believe, and based on that information and belief allege, that Tesla regularly extends, offers to extend, or arranges for the extension of credit, or does other acts that make Tesla a "creditor" pursuant to Section 1602 of the Federal Truth in Lending Act, 15 U.S.C. § 1601 ("TILA").

114.    In the ordinary course and conduct of their business as previously described, Tesla regularly extends, and for some time has regularly extended "consumer credit" as defined at 12 C.F.R. § 1026.2 (2021) ("Regulation Z").

115.    Tesla in the ordinary course of business as previously described, and in connection with "credit sale[s]," as is defined at Regulation Z, caused and is now causing customers, including Plaintiff Malek and the TILA Subclass, to enter into written contracts for the purchase of Defendant Tesla's financing for the purchase of Tesla products and services. In these contracts, Tesla has provided none of the consumer credit cost information and other disclosures required by 12 C.F.R. § 1026 (2021). Tesla does not provide these customers with any consumer credit cost information.

116.    Plaintiff Malek is a natural person and the property and services to be provided pursuant to his loan with Tesla were provided for personal, family, and household use. More specifically, the loan was rendered in connection with Plaintiff's principal dwelling. By and through

the use of Tesla's financing, Tesla failed to timely make material disclosures to Plaintiff Malek and the TILA Subclass as required by the Federal Truth in Lending Act.

117.    Tesla's acts and practices as previously alleged herein are in violation of the Truth in Lending Act and constitute unfair and deceptive acts and practices.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and the Classes, respectfully request that the Court enter an order:

A.    Certifying this case as a class action on behalf of the Classes defined above, appointing Plaintiffs as the representatives of the Classes, and appointing undersigned counsel as class counsel;

B.    Declaring that Defendant's actions, as set out above constitute a breach of contract and violate the UCL, CLRA, Cal. Bus. & Prof. Code § 7160, and TILA;

C.    Awarding damages, including injunctive relief, actual damages, statutory damages, and specific performance of contract;

D.    Awarding Plaintiffs and the Classes their reasonable litigation expenses and attorneys' fees;

E.    Awarding Plaintiffs and the Classes pre- and post-judgment interest, to the extent allowable;

F.    Awarding such other injunctive and declaratory relief as is necessary to protect the interests of Plaintiffs and the Classes; and

G.    Awarding such other and further relief as the Court deems reasonable and just.

**DEMAND FOR JURY TRIAL**

Plaintiffs demand a trial by jury for all issues so triable.

Dated: February 22, 2022

Respectfully submitted,

**MATTHEW AMANS** and **BABAK MALEK**,
individually and on behalf of all similarly situated
individuals,

**EDELSON PC**

By: /s/ Eve-Lynn J. Rapp

Rafey Balabanian (SBN 315962)
rbalabanian@edelson.com
**Edelson PC**
150 California Street, 18th Floor
San Francisco, California 94111
Tel: 415.212.9300
Fax: 415.373.9435

Eve-Lynn J. Rapp (SBN 342892)
erapp@edelson.com
**Edelson PC**
2101 Pearl Street
Boulder, Colorado 80302
Tel: 720.741.0084
Fax: 720.741.0081

**BERGER MONTAGUE PC**

By: /s/ Peter A. Muhic

PETER A. MUHIC
pmuhic@bm.net
**Berger Montague PC**
1818 Market Street, Suite 3600
Philadelphia, Pennsylvania 19103
Tel: 215.875.4633

**COTCHETT, PITRE & McCARTHY, LLP**

By: /s/ Justin T. Berger

JUSTIN T. BERGER (SBN 250346)
jberger@cpmlegal.com
SARVENAZ J. FAHIMI (SBN 226148)
sfahimi@cpmlegal.com
**Cotchett, Pitre & McCarthy, LLP**
San Francisco Airport Office Center
840 Malcolm Road
Burlingame, CA 94010

1

Telephone: (650) 697-6000
Facsimile: (650) 697-0577

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1(h)(3)**

2

I, Eve-Lynn J. Rapp, attest that concurrence in the filing of this document has been obtained

3 from the other signatories. I declare under penalty of perjury that the foregoing is true and correct.

4 Executed this 22nd day of February, 2022 at Boulder, Colorado.

5

6

/s/ Eve-Lynn J. Rapp

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28