EVE-LYNN J. RAPP (SBN 342892)
erapp@edelson.com
EDELSON PC
2101 Pearl Street
Boulder, Colorado 80302
Tel: (720) 741-0076
Fax: (720) 741-0081

PETER A. MUHIC (*pro hac vice*)
pm@millerlawpc.com
THE MILLER LAW FIRM, PC
950 W. University Dr., Suite 300
Rochester, MI 48307
Tel: 248.841.2200
Fax: 248.652.2852

SARVENAZ J. FAHIMI (SBN 226148)
sfahimi@cpmlegal.com
COTCHETT, PITRE & MCCARTHY, LLP
San Francisco Airport Office Center
840 Malcolm Road
Burlingame, CA 94010
Telephone: 650.697.6000
Fax: 650.697.0577

*Class Counsel*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| MATTHEW AMANS and BABAK MALEK, individually and on behalf of all similarly situated individuals,<br><br>*Plaintiffs*,<br><br>v.<br><br>TESLA, INC., a Delaware corporation,<br><br>*Defendant*. | Case No. 3:21-cv-03577-VC<br><br>**Hearing Date**: March 7, 2024<br>**Time**: 1:00 p.m.<br>**Courtroom**: 4 (via Zoom Webinar)<br>**Judge**: Hon. Vince Chhabria<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS** |

**TO THE COURT, ALL PARTIES, AND ATTORNEYS OF RECORD:**

     **PLEASE TAKE NOTICE THAT** on March 7, 2024, at 1:00 p.m., in Courtroom 4, 17th Floor of the United States District Court for the Northern District of California, located at 450 Golden Gate Avenue, San Francisco, CA 94102, via Zoom Webinar, before the Honorable Vince Chhabria, Plaintiffs Matthew Amans and Babak Malek, by and through their undersigned counsel, will and hereby do move the Court for an order awarding attorneys' fees and expenses to Class Counsel and incentive awards to the Named Plaintiffs.

     The Zoom Webinar information to access the hearing is: Webinar ID: 161 285 7657, Password: 547298. You can also access a link to the Zoom Webinar information through Judge Chhabria's webpage, linked here: https://cand.uscourts.gov/judges/chhabria-vince-vc/.

     Plaintiffs' motion is based upon this Notice, the Memorandum of Points and Authorities filed herewith, the exhibits attached thereto, including the Declarations of Eve-Lynn Rapp, Sarvenaz Fahimi, Peter Muhic, and Matthew Amans, filed simultaneously herewith, and the record in this matter, along with any oral argument that may be presented to the Court and evidence submitted in connection therewith.

                                         Respectfully submitted,

                                         **MATTHEW AMANS** and **BABAK MALEK**, individually and on behalf of all similarly situated individuals,

DATED: December 19, 2023            /s/ Eve-Lynn J. Rapp
                                      EVE-LYNN J. RAPP (SBN 342892)
                                      erapp@edelson.com
                                      **EDELSON PC**
                                      2101 Pearl Street
                                      Boulder, Colorado 80302
                                      Tel: 720.741.0084
                                      Fax: 720.741.0081

                                      JOHN AARON LAWSON (SBN 319306)
                                      alawson@edelson.com
                                      YAMAN SALAHI (SBN 288752)
                                      ysalahi@edelson.com
                                      RAFEY S. BALABANIAN (SBN 315962)
                                      rbalabanian@edelson.com

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**EDELSON PC**
150 California Street, 18th Floor
San Francisco, CA 94111
Tel: 415.212.9300
Fax: 415.373.9435

SARVENAZ J. FAHIMI (SBN 226148)
sfahimi@cpmlegal.com
**COTCHETT, PITRE & MCCARTHY, LLP**
San Francisco Airport Office Center
840 Malcolm Road
Burlingame, CA 94010
Tel: 650.697.6000
Fax: 650.697.0577

PETER A. MUHIC (*pro hac vice*)
pm@millerlawpc.com
**THE MILLER LAW FIRM, PC**
950 W. University Dr., Suite 300
Rochester, MI 48307
Tel: 248.841.2200
Fax: 248.652.2852

*Counsel for Plaintiffs*

-ii-

**Table of Contents**

I.     Introduction ......................................................................................................1

II.    Background and the Work Performed by the Settlement Class ...................2

III.   The Court should award Class Counsel 25% of the common fund, plus their
       reasonable costs. ...............................................................................................5

       A.     The results achieved here should justify a benchmark fee award, particularly
              in light of the risks faced in this case. ...................................................7

       B.     The other benefits generated by this litigation support the fee award ...........10

       C.     A lodestar cross-check supports the requested fee. ..........................................10

IV.    Class Counsel's expenses are reasonable and should be reimbursed from the
       Settlement Fund. .............................................................................................12

V.     The Named Plaintiffs should receive incentive awards of $10,000 for their work
       here. ..................................................................................................................12

VI.    Conclusion .......................................................................................................14

<b>Table of Authorities</b>

**United States Circuit of Appeals Cases**

*Brice v. Gonzalez*,
No. 23-15103, 2023 WL 3090669 (9th Cir. Mar. 31, 2023) ...............................................11

*Brice v. Rodgers*,
No. 22-15764, 2023 WL 3568176 (9th Cir. Jan. 5, 2023) ................................................11

*In re Bluetooth Headset Prods. Liab. Litig.*,
654 F.3d 935 (9th Cir. 2011) ..........................................................................................6

*In re Online DVD-Rental*,
779 F.3d 934 (9th Cir. 2015) ......................................................................................6, 12

*In re Optical Disk Drive Prods.*,
959 F.3d (9th Cir. 2020) ...............................................................................................6

*Kim v. Allison*,
No. 22-55345, 2023 WL 8405866 (9th Cir. Dec. 5, 2023)..................................................8

*Lowery v. Rhapsody Int'l, Inc.*,
69 F.4th 994 (9th Cir. 2023) .......................................................................................5, 6

*Rodriguez v. W. Publ'g Corp.*,
563 F.3d 948 (9th Cir. 2009) .........................................................................................12

*Vincent v. Hughes Air W.*, Inc.,
557 F.2d 759 (9th Cir. 1977) .........................................................................................12

*Vizcaino v. Microsoft Corp.*,
290 F.3d 1043 (9th Cir. 2002) ...............................................................................6, 9, 10

*Wininger v. SI Mgmt. L.P.*,
301 F.3d 1115 (9th Cir. 2002) .......................................................................................12

**United States District Court Cases**

*Acosta v. Frito-Lay, Inc.*,
No. 15-CV-02128-JSC, 2018 WL 646691 (N.D. Cal. Jan. 31, 2018)...............................12

*Bellinghausen v. Tractor Supply Co.*,
306 F.R.D. 245 (N.D. Cal. 2015) ...................................................................................10

*Deluca v. Farmers Ins. Exch.*,
No. 17-cv-00034-TSH, 2020 WL 5071700 (N.D. Cal. Aug. 24, 2020)...........................13

-iv-

*Farr v. Acima Credit, LLC,*
   No. 20-cv-8619-YGR, 2021 WL 2826709 (N.D. Cal. July 7, 2021)...................................8

*Frank v. Tesla, Inc.,*
   No. 2:22-cv-01590, 2022 WL 18284398 (C.D. Cal. June 27, 2022) ..................................8

*Hightower v. JPMorgan Chase Bank, N.A.,*
   No. 11-CV-01802-PSG-PLAx, 2015 WL 9664959 (C.D. Cal. Aug. 4, 2015) ..................13

*In re Facebook Biometric Info. Priv. Litig.,*
   522 F. Supp. 3d 617 (N.D. Cal. 2021) .............................................................................11

*In re Korean Air Lines Co., Ltd. Antitrust Litig.,*
   No. CV 07-05107 SJO AGRx, 2013 WL 7985367 (C.D. Cal. Dec. 23, 2013)...................6

*In re Lenovo Adware Litig.,*
   No. 15-MD-02624-HSG, 2019 WL 1791420 (N.D. Cal. Apr. 24, 2019) ...........................9

*In re Lidoderm Antitrust Litig.,*
   No. 14-MD-02521-WHO, 2018 WL 4620695 (N.D. Cal. Sept. 20, 2018).........................6

*In re Omnivision Techs., Inc.,*
   559 F. Supp. 2d 1036 (N.D. Cal. 2008) .........................................................................10

*In re Robinhood Outage Litig.,*
   No. 3:20-CV-01626-JD, 2023 WL 5321525 (N.D. Cal. July 28, 2023) ...........................11

*In re Zoom Video Commc'ns, Inc. Priv. Litig.,*
   No. 20-CV-02155-LB, 2022 WL 1593389 (N.D. Cal. Apr. 21, 2022)..............................11

*Juarez v. Social Fin., Inc.,*
   No. 20-CV-03386-HSG, 2023 WL 3898988 (N.D. Cal. June 8, 2023) ...........................13

*Kim v. Tesla, Inc.,*
   No. 21-cv-03681 (N.D. Cal.) ............................................................................................3

*Malek v. Tesla, Inc.,*
   No. 21-cv-05528 (N.D. Cal.) ............................................................................................3

*Moreno v. S.F. Bay Area Rapid Transit Dist.,*
   No. 17-cv-0211-JSC, 2019 WL 343472 (N.D. Cal. Jan. 28, 2019) ................................11

*Surkhabi v. Tesla, Inc.,*
   No. 22-1315, 2022 WL 19569540 (C.D. Cal. Oct. 27, 2022).............................................8

**State Court Cases**

*Gold v. N.Y. Life Ins. Co.,*
   No. 653923/2012 (N.Y. Sup. Ct. Oct. 26, 2023) ............................................................11

-v-

*Hoff vs. Tesla, Inc.*,
    No. 2177-cv-00804 (Sup. Ct. Essex Cnty., Mass) ...........................................................3, 8

*Laffitte v. Robert Half Int'l Inc.*,
    1 Cal. 5th 480 (2016) ...............................................................................................6

**Miscellaneous Authority**

Cal. Bus. & Prof. Code § 7160 .......................................................................................4

Fed. R. Civ. P. 23................................................................................................3, 5

Fed R. Civ P. 26 ............................................................................................................4

Harri Weber, *Elon Musk reportedly settles defamation suit after saying he'd never 'surrender an unjust case'*, TECHCRUNCH (May 1, 2023)
    https://techcrunch.com/2023/05/01/elon-musk-defamation-suit-tesla-hothi-tslaq/ ...........13

Sam Levin, *Elon Musk calls British diver in Thai cave rescue 'pedo' in baseless attack*, THE GUARDIAN (July 16, 2018),
    https://www.theguardian.com/technology/2018/jul/15/elon-musk-british-diver-thai-cave-rescue-pedo-twitter ...........................................................................................................13

-vi-

1    I.      **Introduction**

2          This case involves the marketing and selling of Solar Roofs by Defendant, Tesla Inc. The

3    Solar Roof is a residential solar product that integrates photovoltaic cells into standard-looking

4    roof tiles. The basic idea behind the Solar Roof design was that consumers could reap the

5    benefits of solar without sacrificing aesthetics. In 2020, Plaintiffs contracted with Tesla to install

6    a Solar Roof on their homes, securing a competitive price for the product. They and many other

7    class members underwent Tesla's multi-step pre-installation process which, once a plan was

8    approved, often involved performing roof repairs, clearing trees for increased sunlight, or

9    upgrading their home's electrical system to prepare for the installation. But the process hit a

10   snag. First, Tesla delayed installation. Then, in April 2021, Tesla jacked up already agreed-to

11   contract prices in an apparent attempt to rescue its struggling residential solar division. What

12   most of these thousands of customers wanted, the Plaintiffs here alleged, was what they

13   originally bargained for: a solar roof at the original contract price.

14         This litigation and Settlement come as close as possible to securing just that. Several

15   months after Plaintiffs filed suit, Tesla rescinded its price increase—though as explained during

16   the litigation on the motion to dismiss, this did not mean a clean reversion to the original

17   purchase price for everyone. In some instances, for example, roofs were still being installed for

18   more than the original contract price, in others, customers were getting differently sized roofs

19   than what they originally bargained for or were charged new fees. After initial settlement

20   attempts did not bear fruit, Plaintiffs successfully litigated a motion to dismiss. Discovery

21   commenced, and so did further settlement discussions. After spirited negotiations, and much time

22   and effort, Class Counsel secured a settlement that the Court recognized at preliminary approval

23   as an excellent result. And it is.

24         Through the Settlement Agreement,[1] Tesla has agreed to proceed with roof installation at

25   the original pricing for everyone who scheduled an installation by April 24, 2023 (which is when

26

27   _____
     [1]      Capitalized terms take the meaning ascribed to them in the Settlement Agreement. (Dkt.
28   109-1, Ex. 1.)

PLAINTIFFS' MTN FOR ATTYS' FEES                          Case No. 3:21-cv-03577-VC (lead case)

1    the agreement in principle was reached) and to also create a $6.08 million Settlement Fund. The

2    Settlement Fund will be used to compensate Class Members for out-of-pocket losses suffered as

3    a result of Tesla's prior refusal to abide by the original contract prices, to offset the increased cost

4    for Settlement Class Members who only elected to proceed with their roof installations after the

5    April 24th date, and to automatically provide to every other class member (without the need to

6    submit a claim form) a payment of at least $100 for their troubles.

7          For their efforts, Class Counsel seek an award of fees just under this Circuit's benchmark

8    award of 25% of the Settlement Fund of $6.08 million, or $1.50 million, plus costs of

9    $9,692.60.[2] While this request is for less than 25% of the Settlement Fund, Class Counsel's

10   efforts helped Solar Roof customers obtain tens of millions in dollars in actual monetary relief by

11   virtue of Tesla's decision to undo its price increases after being pressured by this litigation. This

12   significant additional monetary relief, on top of the outstanding settlement terms negotiated by

13   skilled Class Counsel, demonstrate the reasonableness of Class Counsel's fee request. Plaintiffs

14   respectfully request that the Court grant the motion for fees and costs. Additionally, in light of

15   their efforts in service to the Class, including working with Class Counsel in preparing the

16   lawsuit and responding to written discovery and producing documents, and in the face of the

17   legitimate risk of public reputational criticism as seen in other Tesla cases, Plaintiffs request

18   modest $10,000 service awards to the Class Representatives.

19   **II.      Background and Work Performed for the Settlement Class**

20         A brief overview of the case and the work done by Class Counsel is provided here to

21   contextualize the fee request.

22         Matthew Amans filed his complaint in this action on May 12, 2021, approximately one

23   month after the price increase that gave rise to the Settlement Class's grievance. Over the next

24   three months, two additional cases challenging the same price increase were filed and

25

---

26   [2]      Although the Settlement Agreement permits Class Counsel to seek 25% of the $6.08
     million Settlement Fund, Class Counsel does not seek fees on the additional $80,000 that they
27   negotiated for the Settlement after Tesla notified them that there were 436 additional individuals
     in the Settlement Class. (*See* Dkts. 101 & 109, at 8 n.4.) Instead, they only seek fees on the
28   original $6 million Settlement Fund, which results in a fee request of 24.7%.

1   consolidated with the *Amans* action: *Kim v. Tesla, Inc.*, No. 21-cv-3681 (N.D. Cal.) (*see* Dkt. 17),

2   and *Malek v. Tesla, Inc.*, No. 21-cv-5528 (N.D. Cal.) (*see* Dkt. 22).[3] As these new actions were

3   filed, lawyers from the six firms representing the plaintiffs in these actions began to informally

4   coordinate their efforts, agreeing to work together to facilitate resolution of these cases. These

5   early efforts at coordination led to a motion to appoint interim lead counsel, seeking an interim

6   appointment under Fed. R. Civ. P. 23(g) of three lawyers, representing three different firms, to

7   spearhead these collective efforts. (*See* Dkt. 28.) Judge Koh adopted this proposal in part,

8   appointing Eve-Lynn Rapp as the only interim class counsel, and appointing Peter Muhic and

9   Justin T. Berger to the Plaintiffs' Steering Committee. (Dkt. 33.)[4]

10       In September 2021, approximately four months after the *Amans* complaint was filed, and

11   after an exchange of information and numerous discussions among all counsel, Tesla announced

12   that it would undo the price increase. (*See* Dkt. 30, at 3; *see also* Declaration of Eve-Lynn J.

13   Rapp ("Rapp Decl."), ¶ 5.) Judge Koh realized that this might moot some or all of the case, so

14   she ordered the Parties to attempt to resolve the dispute through private mediation. (Dkt. 26.)

15       In January 2022, the Parties attended a mediation facilitated by Robert Meyer of JAMS.

16   (Dkts. 39 & 40.) Prior to this mediation, Class Counsel sought additional information from

17   Defendant and further investigated Tesla's reversal of the price increase, and any effect it had on

18   the existing claims for relief, in order to determine the framework for an acceptable settlement.

19   The Parties provided Mr. Meyers with high-level proposals for a settlement, but after a day-long

20   mediation and various follow up breakout sessions, were unable to reach any agreement. (Dkt.

21   52.)

22

23

---

24   [3]   As previously conveyed to the Court, a similar class action was filed in the

25   Commonwealth of Massachusetts on August 5, 2021 on behalf of Massachusetts residents. (*See*
     Dkt. 28, at 2 n.1 (referencing *Hoff vs. Tesla, Inc.*, No. 2177-cv-00804 (Sup. Ct. Essex Cnty.,
     Mass.)); *see also* Dkt. 109, at 5 n.2.) That case was never consolidated into the instant action and

26   was ultimately dismissed in November 2022. (*See Hoff*, No. 2177-cv-00804, File Ref. No. 25.)

27   [4]   Justin Berger left Cotchett, Pitre & McCarthy, LLP ("CPM") prior to the preliminary
     approval hearing, so the Court later approved Plaintiffs' request to appoint his Partner, Sarvenaz

28   J. Fahimi—who has been actively involved in the litigation and worked with Plaintiffs' counsel
     since the inception of the case—to the Steering Committee in his stead.

PLAINTIFFS' MTN FOR ATTYS' FEES                                    Case No. 3:21-cv-03577-VC (lead case)

1    Thus, in late February 2022, Class Counsel filed a consolidated amended complaint, with

2    two (2) of the original ten (10) plaintiffs, Dr. Amans and Mr. Malek. (Dkt. 54.) Plaintiffs raised

3    claims for breach of contract, under which they sought both equitable relief/specific

4    performance, and damages, as well as statutory claims under California's Unfair Competition

5    Law and Consumer Legal Remedies Act, and under section 7160 of California's Business and

6    Professions Code, which imposes a statutory penalty against anyone who induces another to

7    enter into a contract for home improvement by fraud. (*Id.*)

8    In due course Tesla moved to dismiss, raising a complex series of jurisdictional

9    arguments, including that the decision to honor the original contract pricing mooted the case, that

10   Plaintiffs lacked standing to seek equitable relief, and that Plaintiffs lacked standing to seek relief

11   of any kind under certain claims for relief, as well as moving to dismiss the Complaint in its

12   entirety on the merits. (Dkt. 63.) The Court heard argument on the motion in June 2022. (Dkt.

13   77.) The Court ultimately denied the motion in part, permitting Plaintiffs to proceed on a breach-

14   of-contract theory for damages and specific performance, but otherwise dismissing the claims.

15   (Dkt. 79.)

16   Following the Court's order allowing the case to proceed, the Parties began to explore

17   once more the possibility of an amicable resolution of the case. (*See* Rapp Decl. ¶ 7.) In that

18   vein, the Parties exchanged further information relevant to the scope of any settlement and

19   conferred frequently to discuss what an appropriate resolution might entail. (*Id.*) At the same

20   time, however, the Parties also engaged in discovery in anticipation of motions for class

21   certification and summary judgment, and an eventual trial. (*Id.* ¶ 8.) The discovery efforts

22   included the exchange of Rule 26(a)(1) disclosures and written discovery, the establishment of an

23   ESI protocol, and the production of thousands of documents. (*Id.*; *see also e.g.*, Dkt. 86

24   (establishing ESI protocol).)

25   Initially, this second round of settlement discussions was full of obstacles. (Rapp Decl. ¶

26   9.) Tesla supplemented its initial productions multiple times, particularly with respect to the

27   composition of any potential class, requiring Class Counsel to continually re-evaluate what a

28

classwide settlement could and should entail. (*Id.*) Moreover, as Tesla explained at preliminary approval, the scope of its solar roof business was also in flux during this time period (because Tesla's offerings and service area were changing), meaning that the nature and scope of any potential non-monetary relief was also in flux. (*Id.*)

Frustrated with the pace of these renewed settlement negotiations, Class Counsel ramped up discovery efforts which involved serving multiple productions of documents, requesting and reviewing thousands of documents from Tesla, meeting and conferring with defense counsel regarding the productions, beginning the process of expert discovery, and scheduling the relevant party depositions. (*Id.* ¶ 10.) As various case deadlines began to loom, the Parties' settlement discussions picked up pace once again. (*Id.* ¶ 11.) With the continued assistance of Mr. Meyer, the Parties were able to reach an agreement in principle to resolve this litigation on a classwide basis. However, more work remained to iron out the final details, and Class Counsel diligently engaged with defense counsel to accomplish this task over the next weeks and months. (*Id.*) Finally, even after the Parties had submitted the final agreement to the Court for preliminary approval, Tesla produced updated data about the composition of the Class, so Class Counsel quickly worked to adjust the Settlement Fund to reflect this new data and accommodate the (relatively minimally) increased Class size. (*Id.* ¶ 13; *see also* Dkt. 101.)

Importantly, throughout the case, Class Counsel and their teams have fielded hundreds of communications (calls and emails) and other inquiries from this unusually engaged Class. (*Id.* ¶ 12.) Class Members have actively monitored the status of the case and checked in on if and/or when they might get their roof installed, or compensation for various alleged damages. (*Id.*)

## III.   The Court should award Class Counsel 25% of the common fund, plus their reasonable costs.

"In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). Per Rule 23, the Court must ensure that any fee award is reasonable. *See Lowery v. Rhapsody*

1    *Int'l, Inc.*, 69 F.4th 994, 1000 (9th Cir. 2023). "The key factor in assessing the reasonableness of

2    attorneys' fees is the benefit to class members." *Id.* at 1002-03.

3            Here, Class Counsel seeks just under 25% of the Settlement Fund, or $1,500,000, plus

4    costs of $9,692.60. When, as here, a class settlement creates a common fund from which class

5    member claims are paid, "courts have discretion to employ either the lodestar method or the

6    percentage-of-recovery method." *In re Lidoderm Antitrust Litig.*, No. 14-MD-02521-WHO, 2018

7    WL 4620695, at *1 (N.D. Cal. Sept. 20, 2018) (quoting *In re Bluetooth Headset Prods. Liab.*

8    *Litig.*, 654 F.3d 935, 942 (9th Cir. 2011)). This discretion must be exercised to reach a

9    reasonable result. *Id.* Nevertheless, "the percentage-of-the-fund method in common-fund cases is

10   the prevailing practice in the Ninth Circuit for awarding attorneys' fees." *In re Korean Air Lines*

11   *Co., Ltd. Antitrust Litig.*, No. CV 07-05107 SJO AGRx, 2013 WL 7985367, at *1 (C.D. Cal.

12   Dec. 23, 2013) (awarding 25% of settlement fund); *see also Laffitte v. Robert Half Int'l Inc.*, 1

13   Cal. 5th 480, 502 (2016) (articulating the same preference under state law). Most percentage-

14   based fee awards are between 20% and 30% of the fund, and the Ninth Circuit has established a

15   benchmark award of 25%. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047-48 (9th Cir.

16   2002).

17           The Ninth Circuit has also enumerated a series of factors a court might consider when

18   assessing the reasonableness of a percentage fee award: "(1) the extent to which class counsel

19   achieved exceptional results for the class; (2) whether the case was risky for class counsel; (3)

20   whether counsel's performance generated benefits beyond the cash settlement fund; (4) the

21   market rate for the particular field of law; (5) the burdens class counsel experienced while

22   litigating the case; (6) and whether the case was handled on a contingency basis." *In re Optical*

23   *Disk Drive Prods. Antitrust Litig.*, 959 F.3d 922, 930 (9th Cir. 2020) (citing *In re Online DVD-*

24   *Rental Antitrust Litig.*, 779 F.3d 934, 954-55 (9th Cir. 2015)).

25           Class Counsel here ask for just under the 25% benchmark award, plus reasonable costs of

26   $9,692.60, which is amply supported by the relevant factors.

27

28

1

2

### A. The results achieved here justify a benchmark fee award, particularly in light of the risks faced in this case.

3

4

First, the relief secured by the Settlement is outstanding. The Settlement remedies the essential grievances which gave rise to this litigation. First, the Settlement binds Tesla to install, at the original pricing, any Solar Roof whose installation was scheduled by April 24, 2023. In effect, this allowed Class Members to take advantage of the original price quote for nearly two years, despite the significant hike in both the equipment and installation costs of the roof. (Settlement Agreement ("Agreement"), ¶¶ 2.4(a), (b).) Second, for customers who did not take advantage of Tesla's well-communicated offers to proceed at the original contract price, there are $2.22 million of funds earmarked to defray any of the increased installation costs that Class Members may incur. (*Id.* ¶¶ 1.18, 1.32; *see also* Dkt. 101.)[5] Third, the Settlement earmarks another $1,406,400 in funds to compensate Class Members for out-of-pocket losses they incurred as a result of delays in installation or in expenses incurred for a roof they never received. (Agreement ¶¶ 1.22, 1.32; Dkt. 101.) Finally, the Settlement earmarks $863,000 so that each Settlement Class Member who does not submit a claim for Increased Installation and/or Out-of-Pocket expenses will receive a pro rata payment that will be adjusted based on how many Increased Installation or Out-of-Pocket Payment claims are submitted. (Agreement ¶ 1.32 & Dkt. 101.) However, in no case will the payment be below $100. (Agreement ¶ 1.4.) Class Counsel's skill in negotiating such a settlement justifies at least the benchmark award here.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

This is all the more so in light of the risk Class Counsel faced in taking this case on contingency. First, there was a significant chance that this case would not proceed in court, or as a class action, in light of the arbitration clause and class-action waiver included in the Solar Roof

20

21

22

23

24

25

26

27

28

---

[5]     As Plaintiffs explained at preliminary approval, Tesla notified customers of its decision to undo the price increase on a few occasions. Most customers either accepted Tesla's offer to return to the original pricing or canceled their contract with Tesla. (*See* Dkt. 109 at 29-30.) 616 customers took no action. (*Id.*) The Settlement still offers Class Members the ability to elect to proceed, but as part of the Settlement, Tesla received a date certain by which original-price installations must be scheduled, in order to be able to assess their overall exposure. The Settlement Fund's Increased Installation Costs pot will go toward defraying the installation costs for those who missed this deadline.

purchase agreements. These clauses are broadly similar to the same types of clauses that exist in other Tesla contracts, and which have survived judicial scrutiny. *See, e.g.*, *Frank v. Tesla, Inc.*, No. 2:22-cv-01590, 2022 WL 18284398, at *9 (C.D. Cal. June 27, 2022) (granting Tesla's motion to compel arbitration of claims arising under Tesla employment agreement); *Surkhabi v. Tesla, Inc.*, No. 22-1315, 2022 WL 19569540, at *5 (C.D. Cal. Oct. 27, 2022) (granting Tesla's motion to compel arbitration of claims based on arbitration clause in purchase agreement for Tesla car). Class Counsel understands that the clause in the Solar Roof agreement was held unenforceable in litigation over the Solar Roof in Massachusetts, but that result turned on idiosyncrasies of Massachusetts law. *See Hoff*, No. 2177-cv-00804, File Ref. No. 14 (denying motion to compel arbitration based on specific provisions in Tesla's Massachusetts contracts). There was a significant risk the result would be different under California law, which jeopardized Class Counsel's ability to recover, especially since the costs of litigating this action likely would not incentivize individual litigation. That is, even though individual recoveries might be large for a class action, the complexity of the case means that the cost of litigating would dwarf any potential contingency fee.[6]

     The risk of nonpayment likewise extended to the merits of the case, as well. Foremost, had Tesla undertaken to litigate this case through trial, Plaintiffs would have had difficulty establishing either that specific performance was an available remedy, or that there were any cognizable consequential damages recoverable under California law. As Plaintiffs explained at

---

[6]    Additionally, while Tesla ultimately waived its ability to enforce the arbitration clause with respect to the Plaintiffs, they likely did not do so with respect to the absent class, at least until agreeing to settle. That discrepancy might have posed significant problems at class certification, as Tesla likely would have argued Amans and Malek were atypical of the class they would have proposed to represent. *See Farr v. Acima Credit, LLC*, No. 20-cv-8619-YGR, 2021 WL 2826709, at *7 (N.D. Cal. July 7, 2021) ("district courts in the Ninth Circuit have decided class certification is properly denied based upon the existence of an arbitration agreement and class action waiver applicable to unnamed class members but not the proposed class representative") (collecting cases). Given how critical the class aspect of this case was to facilitate this litigation, this was a significant risk. It should be noted that this risk is unlike the problem that plagued the settlement in *Kim v. Allison*, No. 22-55345, 2023 WL 8405866 (9th Cir. Dec. 5, 2023) because the presence of the arbitration clause did not give either Amans or Malek any theoretical incentive to settle their claims for pennies on the dollar even at the expense of class members with potentially stronger claims.

1    preliminary approval, there is scant authority permitting specific performance as a remedy

2    outside the context of a sale of real estate. And as for consequential damages, the only such

3    damages stem from delays in and/or the cancellation of roof installation, but it would have been

4    difficult to demonstrate that these damages were within the contemplation of the Parties when

5    negotiating a contract, particularly because contractual damages were expressly disclaimed. (*See*

6    Dkt. 63-2, T&C at ¶ 13 (providing that Tesla's "liability . . . is limited to the Contract Price" and

7    that Tesla is "not liable to you for any indirect, special or consequential damages[.]"). Further,

8    the Court previously dismissed Plaintiffs' statutory fraud-based claims. (Dkt. 79.)

9         And these risks were magnified early on in this litigation when Tesla reversed its decision

10    to increase the price of the Solar Roof. (Rapp Decl. ¶ 14.) This decision necessitated significant

11    additional investigation of the claims of Plaintiffs and the absent class and added a layer of

12    complexity to early motions practice. (*Id.*) There was also a significant risk that this move would

13    moot the Plaintiffs' claims, or render certifying a class difficult or impossible. Nevertheless,

14    Plaintiffs persisted in order to try to secure additional relief for the Class.

15         Despite these substantial risks, Class Counsel advanced all costs and were prepared to

16    further dedicate significant resources to prosecute this case, including through trial and any

17    appeals. (Rapp Decl. ¶ 15.) When Class Counsel agreed to take on this case, they understood that

18    they might need to forego other potentially profitable work in order to litigate this case to a

19    successful conclusion. (*Id.*) Ultimately, Class Counsel concluded that providing Class Members a

20    recovery now, rather than a similar recovery or perhaps no recovery after months or years of

21    complex discovery and motions practice, served Class Members' interests by eliminating the

22    considerable risk of continuing litigation. (*Id.*) *See Vizcaino*, 290 F.3d at 1048-50; *see also In re*

23    *Lenovo Adware Litig.*, No. 15-MD-02624-HSG, 2019 WL 1791420, at *8-9 (N.D. Cal. Apr. 24,

24    2019) (approving fee request based in part on the "substantial risk" class counsel incurred in

25    litigating the action). The results achieved in light of the risks of nonpayment support the

26    requested fee award.

27

28

**B.      The other benefits generated by this litigation support the fee award.**

Months after this litigation commenced, Tesla felt the pressure and decided to reverse course on its price increase. At the time the Parties sought preliminary approval in this matter, Tesla had installed over 1500 roofs at the original price. Tesla further represents that the average price increase (subsequently rescinded) was approximately $77,000. (*See* Dkt. 109 at 29.) Thus, separate and apart from this Settlement, this litigation precipitated approximately $115 million in savings to Class Members over and above the common fund. When these benefits are taken into account, the benchmark fee award amounts to approximately 1.25% of the benefits created for Class Members. Particularly given the hurdles to any recovery, the magnitude of these benefits further confirms that a benchmark fee award is reasonable.

**C.      A lodestar cross-check supports the requested fee.**

Though the Court is not required to engage in a lodestar cross-check, *see Vizcaino*, 290 F.3d at 1050, such a cross-check nevertheless confirms the reasonableness of Class Counsel's requested fee award. The lodestar method requires multiplying the hours invested in the case by counsel by a reasonable hourly rate. This figure is then often enhanced further to account for the results achieved and the risk of nonpayment. *See Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 261 (N.D. Cal. 2015). Mathematical precision is not required for a cross-check. And multipliers between 1 and 4 are typical in class action cases. *See In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1048 (N.D. Cal. 2008).

At current hourly rates, Class Counsel's collective lodestar is $1,188,508.50, reflecting 1,772.1 hours of work. (*See* Exs. A & B to Rapp Decl. (listing hours by timekeeper and category of work); *see also* Declaration of Sarvenaz Fahimi ("Fahimi Decl."), ¶¶ 13-14; Declaration of Peter Muhic ("Muhic Decl."), ¶ 9); *Vizcaino*, 290 F.3d at 1051 ("Calculating fees at prevailing rates to compensate for delay in receipt of payment was within the district court's discretion."). The hours invested into this case are reasonable, considering the case's length and complexity. As explained above, this case involved multiple rounds of protracted settlement negotiations, complex motions practice, and substantial discovery. (Rapp Decl. ¶¶ 6-11.) Moreover, Class

-10-

1   Counsel spent a substantial number of hours fielding calls and requests for information from

2   absent Class Members in this unusually engaged class. (*Id.* ¶ 12.) Further, as the Court can see in

3   the attached declarations setting forth time billed to this case, the case was leanly staffed,

4   permitting Class Counsel to work efficiently on the Class's behalf. (*Id.* ¶ 19.) Finally, Class

5   Counsel's hourly rates are consistently approved as reasonable, and are the same rates Class

6   Counsel charges to paying clients. (*Id.*) *See e.g.*, *In re Facebook Biometric Info. Priv. Litig.*, 522

7   F. Supp. 3d 617, 633 (N.D. Cal. 2021) (finding Edelson PC's hourly rates reasonable for their

8   experience and locality); *Moreno v. S.F. Bay Area Rapid Transit Dist.*, No. 17-cv-0211-JSC,

9   2019 WL 343472, at *6 (N.D. Cal. Jan. 28, 2019) (finding that Edelson PC's rates "are

10  reasonable in light of prevailing market rates in the Bay Area"); *In re Robinhood Outage Litig.*,

11  No. 3:20-CV-01626-JD, 2023 WL 5321525, at *2 (N.D. Cal. July 28, 2023) (approving CPM's

12  rates); *In re Zoom Video Commc'ns, Inc. Priv. Litig.*, No. 20-CV-02155-LB, 2022 WL 1593389,

13  at *11 (N.D. Cal. Apr. 21, 2022), *appeal dismissed sub nom.*, *Brice v. Rodgers*, No. 22-15764,

14  2023 WL 3568176 (9th Cir. Jan. 5, 2023) (same), *appeal dismissed sub nom.*, *Brice v. Gonzalez*,

15  No. 23-15103, 2023 WL 3090669 (9th Cir. Mar. 31, 2023) (same); *Gold v. N.Y. Life Ins. Co.*,

16  No. 653923/2012 (N.Y. Sup. Ct. Oct. 26, 2023) (approving fee request inclusive of Peter Muhic

17  at current rate).

18      Given Class Counsel's lodestar, a benchmark fee award represents a risk multiplier of

19  approximately 1.26. Such a low multiplier confirms the reasonableness of Class Counsel's fee

20  request. This multiplier is on the low end of what is typically approved in this District, and is

21  plainly reasonable, given the excellent result achieved for the Class and the fact that it likely

22  understates the risk of nonpayment faced by Class Counsel, for the reasons outlined above.

23      In sum, a benchmark fee award of $1.5 million is fair and reasonable, given all the facts

24  and circumstances of the case.

25

26

27

28

IV.     **Class Counsel's expenses are reasonable and should be reimbursed from the Settlement Fund.**

In common fund cases, the reasonable expenses of acquiring the fund can be reimbursed to the lawyers who incurred the expense. *See Vincent v. Hughes Air W., Inc.*, 557 F.2d 759, 769 (9th Cir. 1977); *Acosta v. Frito-Lay, Inc.*, No. 15-CV-02128-JSC, 2018 WL 646691, at *11 (N.D. Cal. Jan. 31, 2018) ("There is no doubt that an attorney who has created a common fund for the benefit of the class is entitled to reimbursement of reasonable litigation expenses from that fund.") (citation omitted). Such expense awards comport with the notion that the district court may "spread the costs of the litigation among the recipients of the common benefit." *Wininger v. SI Mgmt. L.P.*, 301 F.3d 1115, 1121 (9th Cir. 2002).

Here, Class Counsel's expenses totaled $9,692.60. (Rapp Decl. ¶ 20; *see also* Fahimi Decl. ¶ 15.) These expenses were standard, including costs for things like electric filings, transcript costs, mediation fees, and electronic discovery storage fees. (Rapp Decl. ¶ 20.) These modest expenses were reasonably incurred in the prosecution of this case and were reasonably necessary in order to obtain the common fund in this case. The Court should not hesitate to reimburse these expenses from the fund.

V.      **The Named Plaintiffs should receive incentive awards of $10,000 for their work here.**

Finally, the Named Plaintiffs request $10,000 service awards in recognition of their efforts on behalf of the Class. The Settlement contemplates that such an award will be paid out of the Settlement Fund. (Agreement ¶ 8.2.)

"[I]ncentive awards that are intended to compensate class representatives for work undertaken on behalf of a class are fairly typical in class action cases." *In re Online DVD*, 779 F.3d at 943 (citation omitted). Such awards "are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009). Still, the Court must scrutinize any proposed award to ensure that it does not undermine the adequacy of the

-12-

1    named plaintiff. *Juarez v. Social Fin., Inc.*, No. 20-CV-03386-HSG, 2023 WL 3898988, at *8

2    (N.D. Cal. June 8, 2023).

3           The proposed awards are reasonable here. The Named Plaintiffs worked closely with

4    Class Counsel to help develop the case, and in Class Counsel's investigation concerning the

5    impact of Tesla's decision to undo its price increase. (Rapp Decl. ¶ 22; Fahimi Decl. ¶ 20.) Each

6    Named Plaintiff also searched for, and produced, responsive documents in discovery, and had

7    begun preparing for their deposition. (Rapp Decl. ¶ 22.) Plaintiffs Amans additionally fielded

8    calls and inquiries from the press, as well as from other Class Members, who contacted him in

9    light of the publicity received by the suit. (Declaration of Matthew Amans ¶ 4.) Moreover, a

10   $10,000 award is proportional to the recovery by Class Members here, which will run well into

11   the thousands of dollars for some Settlement Class Members and would amount to a mere 0.32%

12   of the Settlement Fund. *See Deluca v. Farmers Ins. Exch.*, No. 17-cv-00034-TSH, 2020 WL

13   5071700, at *8-9 (N.D. Cal. Aug. 24, 2020) (approving incentive awards based, in part, on the

14   fact that they were less than what some class members received in settlement, and approving

15   incentive awards to named plaintiffs and class members who were deposed by defendant totaling

16   0.48% of settlement fund); *Hightower v. JPMorgan Chase Bank, N.A.*, No. CV 11-1802 PSG

17   (PLAx), 2015 WL 9664959, at *13 (C.D. Cal. Aug. 4, 2015) (issuing service awards totaling

18   1.5% of settlement fund). Finally, the Class itself could not even exist absent the decisions

19   by Amans and Malek to step forward and sue a company whose CEO has a history of publicly

20   criticizing and even filing suit against those he feels threatened or aggrieved by. *See, e.g.*, Sam

21   Levin, *Elon Musk calls British diver in Thai cave rescue 'pedo' in baseless attack*, THE

22   GUARDIAN (July 16, 2018), https://www.theguardian.com/technology/2018/jul/15/elon-musk-

23   british-diver-thai-cave-rescue-pedo-twitter; *see also* Harri Weber, *Elon Musk reportedly settles*

24   *defamation suit after saying he'd never 'surrender an unjust case'*, TECHCRUNCH (May 1, 2023)

25   https://techcrunch.com/2023/05/01/elon-musk-defamation-suit-tesla-hothi-tslaq/.

26

27

28

PLAINTIFFS' MTN FOR ATTYS' FEES                                    Case No. 3:21-cv-03577-VC (lead case)

VI.     **Conclusion**

        For all the reasons discussed, Plaintiffs respectfully request that the Court grant the

motion for fees and costs and order that service awards be paid to the Named Plaintiffs out of the

Settlement Fund.

                                                Respectfully Submitted,

                                                **MATTHEW AMANS** and **BABAK**
                                                **MALEK**, individually and on behalf of all
                                                similarly situated individuals,

DATED: December 19, 2023                        /s/ Eve-Lynn J. Rapp
                                                EVE-LYNN J. RAPP (SBN 342892)
                                                erapp@edelson.com
                                                **EDELSON PC**
                                                2101 Pearl Street
                                                Boulder, Colorado 80302
                                                Tel: 720.741.0084
                                                Fax: 720.741.0081

                                                JOHN AARON LAWSON (SBN 319306)
                                                alawson@edelson.com
                                                YAMAN SALAHI (SBN 288752)
                                                ysalahi@edelson.com
                                                RAFEY S. BALABANIAN (SBN 315962)
                                                rbalabanian@edelson.com
                                                **EDELSON PC**
                                                150 California Street, 18th Floor
                                                San Francisco, CA 94111
                                                Tel: 415.212.9300
                                                Fax: 415.373.9435

                                                SARVENAZ J. FAHIMI (SBN 226148)
                                                sfahimi@cpmlegal.com
                                                **COTCHETT, PITRE & MCCARTHY, LLP**
                                                San Francisco Airport Office Center
                                                840 Malcolm Road
                                                Burlingame, CA 94010
                                                Tel: 650.697.6000
                                                Fax: 650.697.0577

                                                PETER A. MUHIC (*pro hac vice*)
                                                pm@millerlawpc.com
                                                **THE MILLER LAW FIRM, PC**
                                                950 W. University Dr., Suite 300
                                                Rochester, MI 48307
                                                Tel: 248.841.2200
                                                Fax: 248.652.2852
                                                *Counsel for Plaintiffs*

                                                -14-