EVE-LYNN J. RAPP (SBN 342892)
erapp@edelson.com
**EDELSON PC**
2101 Pearl Street
Boulder, Colorado 80302
Tel: 720.741.0084
Fax: 720.741.0081

PETER A. MUHIC (*pro hac vice*)
pm@millerlawpc.com
**THE MILLER LAW FIRM, PC**
950 W. University Dr., Suite 300
Rochester, MI 48307
Tel: 248.841.2200
Fax: 248.652.2852

*Counsel for Plaintiffs*

*Additional counsel listed on signature page*

SARVENAZ J. FAHIMI (SBN 226148)
sfahimi@cpmlegal.com
**COTCHETT, PITRE & MCCARTHY, LLP**
San Francisco Airport Office Center
840 Malcolm Road
Burlingame, CA 94010
Telephone: 650.697.6000
Fax: 650.697.0577

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| MATTHEW AMANS, and BABAK MALEK, individually and on behalf of all similarly situated individuals,<br><br>*Plaintiffs,*<br><br>v.<br><br>TESLA, INC., a Delaware corporation,<br><br>*Defendant.* | Lead Case No. 3:21-cv-03577-VC<br><br>Consolidated with:<br>Case No. 21-cv-03681-VC<br>Case No. 21-cv-05528-VC<br><br>**Hearing Date**: March 7, 2024<br>**Time**: 1:00 p.m.<br>**Courtroom**: 4 (via Zoom Webinar)<br>**Judge**: Hon. Vince Chhabria<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT** |

**TO THE COURT, ALL PARTIES, AND ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** on March 7, 2024, at 1:00 p.m., in Courtroom 4, 17th Floor of the United States District Court for the Northern District of California, located at 450 Golden Gate Avenue, San Francisco, CA 94102, via Zoom Webinar, before the Honorable Vince Chhabria, Plaintiffs Matthew Amans and Babak Malek, by and through their undersigned counsel, will and hereby do move, pursuant to Federal Rule of Civil Procedure 23(e), to grant final approval of a proposed class action Settlement reached between Plaintiffs and Defendant Tesla, Inc. Corporation.

The Zoom Webinar information to access the hearing is: Webinar ID: 161 285 7657, Password: 547298. You can also access a link to the Zoom Webinar information through Judge Chhabria's webpage, linked here: https://cand.uscourts.gov/judges/chhabria-vince-vc/.

Plaintiffs' motion is based upon this Notice, the Memorandum of Points and Authorities filed herewith, the exhibits attached thereto and/or previously filed with the Court, including the Parties' proposed class action Settlement Agreement (Dkt. 109-1, Ex. 1), the Parties' Class Action Settlement Agreement Addendum (Dkt. 101), and the Declarations of Eve-Lynn Rapp and Kimberly O'Kane, filed simultaneously herewith, and the record in this matter, along with any oral argument that may be presented to the Court and evidence submitted in connection therewith.

Respectfully submitted,

**MATTHEW AMANS** and **BABAK MALEK**, individually and on behalf of all similarly situated individuals,

DATED: January 30, 2024

/s/ Eve-Lynn J. Rapp
EVE-LYNN J. RAPP (SBN 342892)
erapp@edelson.com
**EDELSON PC**
2101 Pearl Street
Boulder, Colorado 80302
Tel: 720.741.0084
Fax: 720.741.0081

RAFEY S. BALABANIAN (SBN 315962)

ii

rbalabanian@edelson.com
JOHN AARON LAWSON (SBN 319306)
alawson@edelson.com
YAMAN SALAHI (SBN 288752)
ysalahi@edelson.com
**EDELSON PC**
150 California Street, 18th Floor
San Francisco, CA 94111
Tel: 415.212.9300
Fax: 415.373.9435

SARVENAZ J. FAHIMI (SBN 226148)
sfahimi@cpmlegal.com
**COTCHETT, PITRE & MCCARTHY, LLP**
San Francisco Airport Office Center
840 Malcolm Road
Burlingame, CA 94010
Tel: 650.697.6000
Fax: 650.697.0577

PETER A. MUHIC (*pro hac vice*)
pm@millerlawpc.com
**THE MILLER LAW FIRM, PC**
950 W. University Dr., Suite 300
Rochester, MI 48307
Tel: 248.841.2200
Fax: 248.652.2852

*Counsel for Plaintiffs*

# TABLE OF CONTENTS

**INTRODUCTION** ........................................................................................................... 1

**BACKGROUND & LITIGATION HISTORY** ........................................................... 2

**SUMMARY OF SETTLEMENT TERMS** .................................................................. 2

**ARGUMENT** ................................................................................................................. 5

**I.**    **Notice comported with Due Process.** .............................................................. 5

**II.**    **The Court should confirm certification of the Settlement Class.** .............. 6

**III.**    **The Settlement merits final approval under Fed. R. Civ. P. 23(e).** ............ 7

      **A.**    **Plaintiffs and Class Counsel have adequately represented the Class.** ...................... 7

      **B.**    **The Settlement was negotiated at arm's length, and lacks any of the hallmarks of collusion identified in the *Bluetooth* decision.** ........................................ 8

      **C.**    **The Settlement secures outstanding relief for the Class.** ................................. 12

           **i.**    **The Class faced significant hurdles to securing relief on the merits.** ......... 12

           **ii.**    **The Class's reaction confirms that the Settlement secures outstanding relief.** ................................................................... 15

           **iii.**    **The remaining factors show that relief is adequate.** .................................... 20

      **D.**    **The Settlement treats Class Members equitably relative to each other.** ................ 21

**CONCLUSION** ............................................................................................................. 23

## <u>TABLE OF AUTHORITIES</u>

**United States Circuit Court of Appeals Cases**

*Darnaa, LLC v. Google LLC*,
    756 F. App'x 674 (9th Cir. 2018)...........................................................................14

*Edwards v. Andrews*,
    846 Fed. App'x 538 (9th Cir. 2021) ........................................................................5

*In re Bluetooth Headset Products Liability Litigation*,
    654 F.3d 935 (9th Cir. 2011).........................................................................7, 8, 10

*Kilgore v. KeyBank, N.A.*,
    718 F.3d 1052 (9th Cir. 2013)................................................................................12

*Reese v. BP Exploration (Alaska) Inc.*,
    643 F.3d 681 (9th Cir. 2011)..................................................................................13

*Rodriguez v. West Publ'g Co.*,
    563 F.3d 948 (9th Cir. 2009)..................................................................................16

*Roes, 1-2 v. SFBC Mgmt., LLC*,
    944 F.3d 1035 (9th Cir. 2019)................................................................................10

*Silber v. Mabon*,
    18 F.3d 1449 (9th Cir. 1994)....................................................................................5

**United States District Court Cases**

*Altamirano v. Shaw Indus., Inc.*,
    No. 13-cv-939-HSG, 2015 WL 4512372 (N.D. Cal. July 24, 2015)......................22

*Andrews v. Plains All Am. Pipeline, L.P.*,
    No. 15-cv-4113, 2022 WL 18143936 (C.D. Cal. Sept. 20, 2022) ..........................20

*Bautista-Perez v. Juul Labs, Inc.*,
    No. 20-cv-1613-HSG, 2022 WL 307942 (N.D. Cal. Feb. 2, 2022) ........................10

*Cmty. Resources for Indep. Living v. Mobility Works of Cal., LLC*,
    533 F. Supp. 3d 881 (N.D. Cal. 2020) .....................................................................9

*Cottle v. Plaid Inc.*,
    340 F.R.D. 356 (N.D. Cal. 2021).............................................................................10

    

*Deluca v. Farmers Ins. Exch.*,
 No. 17-cv-34-TSH, 2020 WL 5071700 (N.D. Cal. Aug. 24, 2020) ......................................22

*Diaz v. United Parcel Serv., Inc.*,
 No. 22-cv-246, 2023 WL 3624779 (E.D. Cal. May 24, 2023)................................................22

*Dyer v. Wells Fargo Bank, N.A.*,
 303 F.R.D. 326 (N.D. Cal. 2014)...........................................................................................17

*Farr v. Acima Credit, LLC*,
 No. 20-cv-8619-YGR, 2021 WL 2826709 (N.D. Cal. July 7, 2021) ....................................13

*Frank v. Tesla, Inc.*,
 No. 22-cv-1590, 2022 WL 18284398 (C.D. Cal. June 27, 2022)..........................................12

*Gumm v. Ford*,
 No. 15-cv-41-MTT, 2019 WL 479506 (M.D. Ga. Jan. 17, 2019) ..........................................7

*Harrison v. Bank of America*,
 No. 19-cv-316-LB, 2021 WL 5507175 (N.D. Cal. Nov. 24, 2021)........................................16

*Huynh v. Quora, Inc.*,
 No. 18-cv-7597-BLF, 2019 WL 11502875 (N.D. Cal. Dec. 19, 2019) ..................................14

*Immanuel Lake v. Zogenix, Inc.*,
 No. 19-CV-1975-RS, 2020 WL 3820424 (N.D. Cal. Jan. 27, 2020)......................................13

*In re LinkedIn User Privacy Litig.*,
 309 F.R.D. 573 (N.D. Cal. 2015)...........................................................................................10

*In re Snap, Inc. Securities Litig.*,
 No. 17-cv-3679, 2021 WL 667590 (C.D. Cal. Feb. 18, 2021) ................................................7

*In re Zoom Video Commc'ns, Inc. Priv. Litig.*,
 No. 20-cv-2155-LB, 2023 WL 2214177 (N.D. Cal. Feb. 23, 2023) ......................................19

*Joh v. Am. Income Life Ins. Co.*,
 No. 18-cv-6364-TSH, 2020 WL 109067 (N.D. Cal. Jan. 9, 2020).........................................9

*Juarez v. Social Finance, Inc.*,
 No. 20-cv-3386-HSG, 2022 WL 17722382 (N.D. Cal. Dec. 15, 2022) ..........................22, 23

*Mendez v. C-Two Grp., Inc.*,
 No. 13-cv-5914-HSG, 2017 WL 2861118 (N.D. Cal. July 5, 2017) .......................................6

*Naiman v. Total Merchant Servs., Inc.*,
 No. 17-cv-3806-JSC, 2019 WL 13194603 (N.D. Cal. Apr. 16, 2019) ....................................6

vi

*O'Connor v. Uber Techs., Inc.*,
    No. 13-cv-3826-EMC, 2019 WL 1437101 (N.D. Cal. Mar. 29, 2019) ..................................... 7

*Surkhabi v. Tesla, Inc.*,
    No. 22-cv-1315, 2022 WL 19569540 (C.D. Cal. Oct. 27, 2022) ............................................ 13

*Vianu v. AT&T Mobility, Inc.*,
    No. 19-cv-3602-LB, 2022 WL 16823044 (N.D. Cal. Nov. 8, 2022)................................... 9, 10

**State Court Cases**

*Food Safety Net Servs. v. Eco Safe Sys. USA, Inc.*,
    209 Cal. App. 4th 1118 (2012) ...................................................................................... 14, 15

*Hoff v. Tesla, Inc.*,
    No. 2177-cv-00804 (Sup. Ct. Essex Cnty., Mass.).................................................................. 13

*Murrey v. Superior Court*,
    87 Cal. App. 5th 1223 (2023) .................................................................................................. 12

**Miscellaneous Authority**

4 NEWBERG & RUBENSTEIN ON CLASS ACTIONS § 13:50 (6th ed.).......................................... 8

58 Cal. Jur. 3d *Specific Performance* § 49 (Aug. 2023 ed.) ................................................... 14

Fed R. Civ. P. 23 ................................................................................................................*passim*

PLAINTIFFS' MOTION FOR
FINAL APPROVAL

CASE NO. 3:21-cv-3577-VC

**INTRODUCTION**

The Settlement Agreement for which Plaintiffs now seek final approval arises from Tesla's decision to delay installation and dramatically increase the contacted for cost to purchase and install the Tesla Solar Roof, the company's first major foray into the residential solar market. The Plaintiffs' claims attacked the price increase principally as a breach of contract, that is, as unauthorized by the terms of the purchase agreements signed by both Tesla and the 8,622 individuals who received the price increase.[1] The consolidated complaint sought several types of relief, including specific performance of the original contract or damages for prices paid beyond the original agreed-upon price, damages attributable to the delay in installation and/or cancelled contracts (for instance, from having a more expensive utility plan for longer than expected, redoing tree work, or making repairs to accommodate Tesla's anticipated roof installation), restitution of any profits Tesla reaped through its delays and price increases, and any available statutory damages.

The Settlement reached here provides exceptional redress for these injuries. First, through the Settlement, Tesla pledged to honor the original contract pricing for anyone who had a roof installation date scheduled by April 24, 2023. As of the preliminary approval filing, Tesla had already installed over 1500 of those Solar Roofs resulting in an estimated $115 million in benefits to the Class. Second, Tesla has established a $6.08 million Settlement Fund offering three categories of relief: (1) money to defray Increased Installation Costs for those within Tesla's current service territory (it has changed since 2021) who, after originally not seeking to move forward with Tesla nearly 18 months after they offered to honor the original price, now choose to enter into a new Solar Roof contract; (2) money to defray Out-of-Pocket Costs incurred as a result of contract cancellations or Tesla's delays; and (3) money to more generally compensate for Tesla's breach of contract. While the first two categories of payments require a claim form and supporting documentation, the third

---

[1]    The Settlement Class had previously been stated to contain 8,636 members, but after removing duplicates from Tesla's records, Angeion determined that there were 8,622 unique individuals in the Settlement Class. (*See* Declaration of Kimberly O'Kane of Angeion Group ("O'Kane Decl.") ¶ 6.)

- 1 -

type (available to those individuals who do not opt for the other type of relief) is a $100 payment (which could potentially increase) that will occur automatically.

Since the Court preliminarily approved the Settlement, the Parties have effectuated the Notice Plan. Notice by U.S. Mail and/or e-mail was delivered to **all** 8,622 Settlement Class Members. (*See* O'Kane Decl. ¶ 11.) 158 Class Members have submitted facially valid claims for Out-of-Pocket Losses and currently stand to recover approximately 55% of their money back, though this amount is still subject to the Settlement Administrator's completed review. (*Id.* ¶¶ 16-17.) 26 Class Members have submitted potentially valid claims for Increased Installation Costs, and upon installation will recoup no less than just under approximately 75% of the cost increase. (*Id.* ¶¶ 16, 30; Declaration of Eve-Lynn J. Rapp ("Rapp Decl.") ¶ 12.) And every Class Member that didn't submit an Approved Claim will receive a check for at least $100. This amount of recovery falls comfortably within the ranges estimated at preliminary approval. Finally, only three objections have been filed, two of which have now been requested to be withdrawn. (*See* Rapp Decl. ¶ 4; *see also* O'Kane Declaration ¶¶ 20-21; Dkt. 118, Bruce Humphrey Objection Withdrawal Request.)

The reaction of the Class, including the single pending objection, confirms what this Court already preliminarily determined: the Settlement here is fair, reasonable, and adequate, and worthy of final judicial approval.

## BACKGROUND & LITIGATION HISTORY

Pursuant to the Northern District of California's Procedural Guidance for Class Action Settlements, Plaintiffs do not repeat the background and litigation history set forth in their Motion for Attorneys' Fees, Costs, and Service Awards. (Dkt. 115.)

## SUMMARY OF SETTLEMENT TERMS

For the Court's convenience, the terms of the Settlement are briefly summarized here.

***Settlement Class***: At Preliminary Approval, the Court certified for settlement purposes a Settlement Class consisting of all persons with whom Tesla entered into a contract for the purchase and/or installation of a Solar Roof with or without a Powerwall energy storage system in the United

PLAINTIFFS' MOTION FOR
FINAL APPROVAL

CASE NO. 3:21-cv-3577-VC

1  States and whom Tesla notified, in or around April 2021, would be required to pay an increased price

2  as a condition for performance of the contract. (Dkt. 114 ¶ 4.)[2]

3  ***Monetary Settlement Relief***: The Settlement establishes a non-reversionary Settlement Fund

4  of $6,080,000, out of which Settlement Class Members may claim three types of relief, as

5  applicable. First, $1,406,400 is set aside for payments to Settlement Class Members who suffered

6  out-of-pocket losses in preparation for a Solar Roof installation that was ultimately delayed or

7  canceled, but for whatever reasons, did not previously submit a request to Tesla for reimbursement.

8  These costs include things like required tree removal, utility panel upgrades, roof repairs, increased

9  utility costs, and the costs associated with getting the necessary municipal permits or HOA

10 approvals. (*See* Dkt. 109-1, Ex. 1, Settlement ¶¶ 1.22, 1.32; *see also* Addendum, Dkt. 101.)[3] Second,

11 $2,220,000 is set aside for Settlement Class Members who did not previously decide to proceed with

12 a Solar Roof installation at their originally agreed-to price despite having the opportunity to do so,

13 but who now elect to proceed with an installation even though prices have subsequently increased in

14 the intervening two years. Assuming Tesla currently services the location, and the site is otherwise

15 suitable for a Solar Roof based on Tesla's standard qualification criteria, these Settlement Class

16 Members will be entitled to a proportional share of this pot of money to help defray (or potentially

17 cover entirely) the increase in price from the original purchase agreement signed by the Settlement

18 Class Member. (Dkt. 109-1, Ex. 1, Settlement ¶¶ 1.18, 1.32; Dkt. 101.) Finally, every Settlement

19 Class Member who is not seeking to recover an Out-of-Pocket Loss Payment and/or Increased

---

20 [2]     Excluded from the Settlement Class are: (a) any Judge or Magistrate presiding over this
21 action and members of their families; (b) Defendant, Defendant's subsidiaries, parents, successors,
   predecessors, and any entity in which Defendant or its parents have a controlling interest and its
22 current or former employees, officers and directors; (c) persons who properly execute and file a
   timely request for exclusion from the Settlement Class; and (d) the legal representatives, successors,
23 and assigns of any such excluded persons. (Dkt. 114 ¶ 4, n.1.)
24 [3]     The Settlement Agreement originally created a $6,000,000 Settlement Fund that allocated
   $1,370,000 to the Out-of-Pocket Loss Fund and $820,000 to the Automatic Payment Fund. (Dkt.
25 109-1, Ex. 1, Settlement ¶ 1.32.) As explained in Plaintiffs' Addendum, Tesla subsequently provided
   updated data regarding the approximate class size and status of the Settlement Class, which
26 increased the Settlement Class size by 436 individuals. (Dkt. 101.) As a result, Tesla agreed to
   increase the Settlement Fund accordingly. (*Id.*) The Increased Installation Cost Fund size did not
27 change.

28                                              - 3 -

PLAINTIFFS' MOTION FOR                                              CASE NO. 3:21-cv-3577-VC
FINAL APPROVAL

Installation Cost Payment will be entitled to an equal share of the balance of the fund (once fees, costs, and a service award are subtracted). (Dkt. 109-1, Ex. 1, Settlement ¶ 1.4.) The Settlement earmarks $863,600 for these Automatic Payments, which ensures that Class Members who haven't submitted an Approved Claim will receive an Automatic Payment of at least $100. (Dkt. 109-1, Ex. 1, Settlement ¶¶ 1.4, 1.32, 2.1; Dkt. 101.)

*Prospective Relief*: As a part of this Settlement, Tesla has agreed to honor the original Solar Roof contracts and pricing for all Settlement Class Members whose Solar Roofs were scheduled to be installed as of April 24, 2023, i.e., two years since the original price increase. (*Id.* ¶ 2.4(a), (b).) In addition, after the filing of this lawsuit and Tesla's subsequent decision to install Solar Roofs at the original contract price, over fifteen hundred Solar Roofs were already installed at the original price (*Id.* ¶ 2.4(a).) In consideration of the relief described above, all other Solar Roof contracts will be deemed canceled. (*Id.* ¶ 3.2.) Tesla will likewise refund all deposits received on canceled contracts, to the extent they have not already done so. (*Id.* ¶ 2.4(c).) As noted above, Settlement Class Members whose contracts have been canceled, but still live in a Tesla service area and wish to receive a Tesla roof can receive a new price quote and make a claim against the Settlement Fund for an Increased Installation Cost Payment if they so choose.

*Payment of Notice and Administrative Costs*: The Settlement provides that reasonably incurred administration costs will be reimbursed out of the Settlement Fund. (*Id.* ¶ 1.28.) As explained below, Angeion previously estimated that it's services in this matter would cost $68,000. That amount increased to $73,965 after the Court's instruction to supplement email notice with direct postcard notice to the Settlement Class. As of the end of December 2023, the Settlement Administrator has incurred total costs of $41,753.06, (O'Kane Decl. ¶ 32.)

*Payment of Attorneys' Fees, Costs, and Service Award*: The Settlement provides that, subject to Court approval, Class Counsel are entitled to reasonable attorney's fees and costs to be paid from the Settlement Fund, and that the Class Representatives are entitled to a reasonable service award to be paid from the Settlement Fund. (Dkt. 109-1, Ex. 1, Settlement ¶¶ 8.1-8.2.) Class Counsel have petitioned for an award of fees in the amount of $1,500,000, or about 24.7% of the Settlement

1   Fund, plus reimbursement of reasonable costs in the amount of $9,692.60. (Dkt. 115.) The Class

2   Representatives have petitioned for service awards of $10,000 each. (*Id*.) Class Members have

3   lodged no objections to these requests.

4       ***Release of Liability***: Settlement Class Members will release Tesla from any claims arising

5   from the April 2021 price increase. (Dkt. 109-1, Ex. 1, Settlement ¶ 1.25.) This release is intended to

6   be no broader than the factual predicate for this lawsuit.

7                                   **ARGUMENT**

8   **I.    Notice comported with Due Process.**

9       The Notice Program contemplated by the Settlement, and approved by the Court, has been

10  highly successful. Following this Court's order granting preliminary approval to the Settlement,

11  Tesla provided the Settlement Administrator, Angeion Group, with the mailing and email addresses

12  for 8,622 Settlement Class Members, which accounts for the entirety of the Settlement Class.

13  (O'Kane Decl. ¶ 6.) On November 17, 2023, Angeion then mailed and emailed notice of the

14  Settlement to each mailing and email address provided by Tesla. (*Id*. ¶¶ 7-11.) Of the 8,542 Class

15  member for whom there was a valid email address, 302 of those emails were undeliverable. (*Id*. ¶ 8.)

16  However, there was a valid mailing address associated with each of those 302 Class Members. (*Id*.)

17  Prior to sending the 8,622 postcards, Angeion processed the addresses through the USPS National

18  Change of Address database and updated the mailings. (*Id*. ¶¶ 9-10.) 19 of the postcard notices were

19  returned, and Angeion was able to get updated addresses for 10 of those Class Members to whom

20  notice was then successfully delivered. (*Id*. ¶ 11.) However, the 9 Class Members whose postcards

21  were returned and for whom there was no valid forwarding address received the email notice. (*Id*.)

22  Accordingly, direct notice was provided to 100% of Settlement Class Members and easily satisfies

23  Due Process. (*Id*.) *See Silber v. Mabon*, 18 F.3d 1449, 1454 (9th Cir. 1994) (rejecting argument that

24  "notice must actually be received to provide an opportunity to opt out for purposes of due process,"

25  and holding that "the appropriate standard is the best notice practicable") (internal quotation

26  omitted); *Edwards v. Andrews*, 846 Fed. App'x. 538, 539 (9th Cir. 2021) (holding that direct notice

27  to "at least 75 percent of the class" satisfied due process); *Naiman v. Total Merchant Servs., Inc.*, No.

28                                      - 5 -

1   17-cv-3806, 2019 WL 13194603, at *8 (N.D. Cal. Apr. 16, 2019) (holding that notice to "only

2   eighty-three percent of the Settlement Class members" satisfied due process); *Mendez v. C-Two*

3   *Grp., Inc.*, No. 13-cv-5914-HSG, 2017 WL 2861118, at *4 (N.D. Cal. July 5, 2017) (granting final

4   approval where direct notice provided to 88% of class members).

5            In addition to direct notice via mail and email, Angeion established a Settlement Website

6   with a summary of the Settlement; important dates and deadlines, such as the Objection and

7   Exclusion Deadline and the Final Approval Hearing date; answers to frequently asked questions; and

8   the Long Form Notice of Class Action Settlement. (O'Kane Decl. ¶ 14.) The website also contains

9   relevant case documents, including the Consolidated Class Action Complaint; Class Action

10  Settlement Agreement and the later addendum; Plaintiffs' Renewed Motion for and Memorandum in

11  Support of Preliminary Approval; the Preliminary Approval Order; and Plaintiffs' Motion in Support

12  of Attorneys' Fees, Costs and Service Awards. (*Id.*) Class Counsel will also ask Angeion to publish

13  this final approval motion on the Settlement Website promptly after it is filed.

14           The Court should reaffirm its finding at preliminary approval that the Notice, as

15  implemented, provided the Settlement Class with the notice required by Due Process and the Federal

16  Rules. (Dkt. 114 ¶ 9.)

17  **II.    The Court should confirm certification of the Settlement Class.**

18           The Court preliminarily certified the above-defined Class for settlement purposes in its order

19  granting preliminary approval. (*Id.*) No objector took any issue with class certification. This is no

20  surprise because each of the prerequisites for Rule 23(b) certification is readily met here. The 8,622-

21  person Class (numerosity) raises claims concerning the Defendant's common, classwide conduct,

22  claims which principally require the resolution of the question whether the April 2021 price increase

23  was authorized by language that was included in purchase agreements signed by each Class Member

24  (commonality and predominance). (*See* Dkt. 109.) The named plaintiffs, each of whom was

25  subjected to the price increase and each of whom raise identical claims as the absent Settlement

26  Class (typicality), have demonstrated their commitment to pursuing relief on behalf of the absent

27  Class Members, as outlined in their submission petitioning for service awards (Dkt. 115 at 12-13),

28                                              - 6 -

1   and have retained counsel with plenty of experience litigating cases of similar size and complexity

2   (adequacy). (*See* Dkt. 109.) And as this case has shown, litigating the common issues here, while

3   seemingly straightforward, requires the investment of time and money that would dwarf any

4   recovery, so individual litigation is not incentivized (superiority). The Court should therefore

5   confirm certification of the Settlement Class.

6   **III.    The Settlement merits final approval under Fed. R. Civ. P. 23(e).**

7          As before, the Court's analysis of whether to approve the proposed Settlement is guided by

8   the factors outlined in Rule 23(e), and, because of the pre-certification posture of this case, the

9   factors identified by the Ninth Circuit in *In re Bluetooth Headset Products Liability Litigation*, 654

10  F.3d 935 (9th Cir. 2011). Because the *Bluetooth* factors are relevant to one of the procedural

11  concerns highlighted by Rule 23(e), the two tests are discussed together. Ultimately, this Settlement

12  easily clears the heightened bar set for pre-certification settlements.

13         **A.    Plaintiffs and Class Counsel have adequately represented the Class.**

14         The first Rule 23(e) factor concerns adequate representation. The focus of this analysis is "on

15  the actual performance of counsel acting on behalf of the class" throughout the litigation and in

16  settlement negotiations. Fed. R. Civ. P. 23(e) Advisory Committee's Note to 2018 Amendment; *see*

17  *Gumm v. Ford*, No. 5:15-cv-41-MTT, 2019 WL 479506, at *3 (M.D. Ga. Jan. 17, 2019). This factor

18  overlaps significantly with the adequacy requirement of Rule 23(a). *See O'Connor v. Uber Techs.,*

19  *Inc.*, No. 13-cv-3826-EMC, 2019 WL 1437101, at *6 (N.D. Cal. Mar. 29, 2019). In considering this

20  factor, courts should further examine whether plaintiff and class counsel had adequate information to

21  negotiate a class-wide settlement. Fed. R. Civ. P. 23(e) Advisory Committee's Note to 2018

22  Amendment. Ultimately, this factor is generally satisfied where the named plaintiff and class counsel

23  "have prosecuted the case with diligence and success." *In re Snap, Inc. Secs. Litig.*, No. 17-cv-3679,

24  2021 WL 667590, at *1 (C.D. Cal. Feb. 18, 2021).

25         No one objected to the representation of the Settlement Class. (Rapp Decl. ¶ 4.) Nor could

26  they. When discovery began, Class Counsel obtained the information necessary to confirm the size

27  of any potential class and the scope of the Class's losses. (Dkt. 109-1 ¶¶ 14-25.) They confirmed that

28                                              - 7 -

the material language was identical in each purchase contract, and that each putative class member underwent the same multi-step process to prepare for the installation of their Solar Roof. (*Id.*) And combined with their experience litigating consumer class actions of similar scope and complexity, Class Counsel were able to intelligently evaluate the strengths and weaknesses of the case and reach a Settlement that fairly and appropriately compensates the Settlement Class for their injuries. (*Id.*)

Moreover, Class Counsel has devoted significant additional time to helping Class Members obtain relief under the Settlement during the claims period. (Rapp Decl. ¶ 10.) Class Counsel has fielded dozens of calls and emails from Class Members seeking more information or guidance on how to submit claims. (*Id.*) Since the Notice was effectuated, Class Counsel estimate that they have spent 5-15 hours per week guiding Class Members through the claims process and working with the Settlement Administrator and/or Tesla to solve any issues with administration that have arisen during the notice and claims period. (*Id.* ¶ 12.)

This Rule 23(e) requirement is therefore satisfied.

**B.      The Settlement was negotiated at arm's length, and lacks any of the hallmarks of collusion identified in the *Bluetooth* decision.**

The second Rule 23(e) factor asks whether the proposed settlement was negotiated at arm's length. "This inquiry aims to root out settlements that may benefit the plaintiffs' lawyers at the class's expense[]." 4 Newberg & Rubenstein on Class Actions § 13:50 (6th ed.). The concern, which is also embodied in this Circuit's *Bluetooth* factors, is that "the defendant will dangle such a healthy fee in front of the plaintiffs' lawyer that they will settle the class's claims at a discount." *See id.*; *see also Bluetooth*, 654 F.3d at 946 ("Prior to formal class certification, there is an even greater potential for a breach of fiduciary duty owed the class during settlement. Accordingly, such agreements must withstand an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e).").

The best evidence that this Settlement was the product of non-collusive negotiations is the length of negotiations, coupled with the presence of a third-party neutral, and, as explained in more detail below, the outstanding result the Settlement represents for the Settlement Class. Considering

1    just the mechanics of the negotiation, first, the presence of negotiations overseen by a third-party is a

2    strong sign that any settlement was conducted at arm's length. *See Joh v. Am. Income Life Ins. Co.*,

3    No. 18-cv-6364-TSH, 2020 WL 109067, at *7 (N.D. Cal. Jan. 9, 2020) ("The involvement of a

4    neutral mediator is evidence that settlement negotiations were conducted at arm's length."). Here, the

5    Parties worked with Robert A. Meyer, Esq., of JAMS for over a year, first, through a day-long

6    mediation (which included pre-mediation submissions and conferences) and then through various

7    follow-up discussions. (Dkt. 109-1 ¶¶ 3, 5-7.) Mr. Meyer has significant experience mediating class

8    actions and complex business disputes, and his assistance helps to demonstrate that the conversations

9    were at arms' length.

10           Moreover, the course of negotiations is strong evidence that settlement discussions did not

11   compromise the Settlement Class's interest. At the Court's direction, the Parties participated in a full-

12   day mediation session before any motions practice. (Dkt. 52.) From there, and with the assistance of

13   Mr. Meyer, the Parties continued their initial settlement discussions for months. (Dkt. 109-1 ¶¶ 5-7;

14   *see also id.*, Ex. 1, Settlement, Recital H.) After not reaching an agreement at that point, the Parties

15   resumed negotiations following the Court's partial denial of Tesla's motion to dismiss. (Dkt. 109-1

16   ¶ 3.) While the Parties actively engaged in discovery, they continued to communicate, for several

17   months, about a potential resolution of the case, reengaging the assistance of Mr. Meyer as needed.

18   (Dkt. 109-1 ¶ 5; *id*. Ex. 1, Settlement, Recital L.) Still, over the course of this process, settlement

19   talks broke down entirely on various occasions. (Dkt. 109-1 ¶ 6.) And, even after the deal was

20   executed, when Tesla provided Class Counsel with updated information about the class size, Class

21   Counsel obtained an additional $80,000 to ensure adequate relief. (Dkt. 101.) Ultimately, the length

22   of these negotiations—which spanned over the course of 18 months—weighs in favor of finding that

23   the Settlement is the product of serious, informed, non-collusive negotiations. *See Cmty. Resources

24   for Indep. Living v. Mobility Works of Cal., LLC*, 533 F. Supp. 3d 881, 889 (N.D. Cal. 2020)

25   ("serious, informed, non-collusive negotiations" taking place over an "extended" period weighed in

26   favor of settlement approval); *Vianu v. AT&T Mobility, Inc.*, No. 19-cv-3602-LB, 2022 WL

27

28                                                    - 9 -

16823044, at *7 (N.D. Cal. Nov. 8, 2022) (finding that negotiations aided by an experienced

mediator weighed in favor of settlement approval).

Moreover, the Settlement bears none of the "subtle signs of implicit collusion" that the Ninth

Circuit has cautioned district courts to be on alert for. *Roes, 1-2 v. SFBC Mgmt., LLC*, 944 F.3d 1035,

1049-50 (9th Cir. 2019). These factors, commonly called the *Bluetooth* factors, are: (1) "when

counsel receive a disproportionate distribution of the settlement;" (2) "when the parties negotiate a

'clear sailing' arrangement" (i.e., an arrangement where defendant will not object to a certain fee

request by class counsel); and (3) "when the parties arrange for fees not awarded to revert to

defendants rather than be added to the class fund." *Bluetooth*, 654 F.3d at 947.[4]

First, Class Counsel have actually petitioned for a fee award that is slightly *below* this

Circuit's benchmark. (*See* Dkt. 115.) Although the Settlement permitted Class Counsel to seek an

award of 25% of the final Settlement Fund value, Class Counsel elected to calibrate their petition to

the size of the Settlement Fund prior to the late addendum that increased the value of the fund based

on updated information about class size. Benchmark awards have been deemed "presumptively

reasonable," and even greater awards have been held not disproportionate. *See, e.g.*, *Bautista-Perez*,

2022 WL 307942, at *6 ("And while the Settlement Agreement authorizes Plaintiffs' counsel to

request up to $750,000 in attorneys' fees, which is about 42% of the gross settlement fund, it does

not necessarily contemplate a disproportionate cash allocation between counsel and the class.");

*Cottle, v. Plaid Inc.*, 340 F.R.D. 356, 377-78 (N.D. Cal. 2021) (proposed 25% award was

"presumptively reasonable" and not a disproportionate fee award); *In re LinkedIn User Priv. Litig.*,

309 F.R.D. 573, 589 (N.D. Cal. 2015) (proposal to seek fees and costs equal to 32% of settlement not

disproportionate). *A fortiori*, Counsel's requested below-benchmark fee is not indicative of collusion.

---

[4]      Later cases have also indicated that "large incentive payments seemingly untethered from
service to the class" also may be evidence of collusion. *Roes, 1-2*, 944 F.3d at 1049-50; *see Bautista-
Perez v. Juul Labs, Inc.*, No. 20-cv-1613-HSG, 2022 WL 307942, at *6-7 (N.D. Cal. Feb. 2, 2022).
The size of the service award contemplated by the Settlement is discussed in conjunction with
another of the Rule 23(e) factors, concerning the equitable distribution of settlement proceeds. *See
infra* § III.D.

1    Second, there is no clear sailing agreement here. Although Tesla ultimately declined to

2    oppose Class Counsel's fee request, they retained the right to do so under the Settlement Agreement.

3    (Dkt. 109-1, Ex. 1, Settlement ¶ 8.1 ("Defendant may challenge the amounts requested.").)

4    Third, there is no reverter. Even if valid claims did not exhaust the money set aside for Out-

5    of-Pocket Costs or Increased Installation Costs, the residue would be distributed as Automatic

6    Payments. (*Id*. ¶ 2.1) To date, Class Members have presently filed claims seeking a total of

7    $3,812,808.15. Of that total, $1,257,518.72 is from the New Contract Installation Fund (though this

8    number only accounts for Increased Installation Payment Cost claims for some of the claimants, as

9    not everyone has provided Angeion with updated contract pricing information) and $2,555,289.43

10    from the Out-of-Pocket Loss Fund. (O'Kane Decl. ¶ 16.) Of the Out-of-Pocket Loss Fund claims,

11    $733,077.18 has been approved, though Settlement Class Members can continue to supplement their

12    claims through the date of this filing, and the Settlement Administrator will continue to process any

13    additional information that is received. (*Id*. ¶¶ 24-25.) Additionally, in effort to approve all valid

14    claims, the Settlement Administrator is in the process of obtaining additional information from Tesla

15    about Class Member's original contract prices if that is the only missing information necessary to

16    validate their claim, even if the Class Members failed to submit such information following the

17    issuance of the deficiency notice. (*Id.* ¶ 26.)

18    As discussed in greater detail below, because the terms of the Settlement Agreement require

19    installation and proof of payment before Increased Installation Cost Payments can be fully reviewed,

20    Angeion cannot yet complete the review of claims made for funds from the New Contract

21    Installation Fund. (*Id*. ¶ 31.) However, such claims will be promptly reviewed by Angeion and

22    processed once the roofs are installed and paid for by the Class members, in accordance with the

23    terms of the Settlement. In any event, no amount will revert to Defendant.

24    Thus, the terms of the Settlement contain none of the subtle signs of collusion that the Ninth

25    Circuit has cautioned against, confirming that the Settlement was negotiated at arm's length.

26

27

28

1          **C.      The Settlement secures outstanding relief for the Class.**

2          The next Rule 23(e) factor directs the Court to consider whether "the relief provided for the

3   class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the

4   effectiveness of any proposed method of distributing relief to the class, including the method of

5   processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including

6   timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." Fed. R.

7   Civ. P. 23(e). Each of these considerations point toward the conclusion that the relief secured by the

8   Settlement is outstanding.

9          **i.      The Class faced significant hurdles to securing relief on the merits.**

10          The overall size of the Settlement Fund and the anticipated relief to Settlement Class

11   Members is substantial in light of the significant hurdles Class Members would have faced to secure

12   relief on the merits.

13          As explained in the preliminary approval briefing, the Solar Roof Purchase Agreements

14   would have presented the first hurdle to classwide relief. These agreements included, for every Class

15   Member, an arbitration clause and a class action waiver. (*See* Dkt. 63-1, Ex. A, Tesla Terms &

16   Conditions ("T&C") ¶ 16.) In Class Counsel's considered judgment, these terms are likely

17   enforceable: The arbitration provision of the purchase contracts is located on the second page of a

18   three-page terms and conditions in an outlined box that draws attention to the provision, provides

19   that arbitration will occur in a location convenient to the individual purchaser, allows thirty days for

20   the consumer to opt out, and provides that Tesla will cover all arbitration costs. (*See id.*) Clauses of a

21   similar nature have regularly been held enforceable. *See, e.g.*, *Murrey v. Superior Court*, 87 Cal.

22   App. 5th 1223, 1247-48 (2023) (noting that the location of the arbitration and how fees are split are

23   relevant to whether the agreement is unconscionable); *Kilgore v. KeyBank, N.A.*, 718 F.3d 1052,

24   1059 (9th Cir. 2013) (en banc) (arbitration provision that was not "buried in fine print . . . but was

25   instead in its own section [and] clearly labeled" was not procedurally unconscionable). And, indeed,

26   similar clauses in other Tesla contracts likewise have been held enforceable on numerous occasions.

27   *See, e.g.*, *Frank v. Tesla, Inc.*, No. 2:22-cv-01590, 2022 WL 18284398, at *9 (C.D. Cal. June 27,

28                                              - 12 -

2022) (granting Tesla's motion to compel arbitration of claims arising under Tesla employment agreement); *Surkhabi v. Tesla, Inc.*, No. 22-1315, 2022 WL 19569540, at *5 (C.D. Cal. Oct. 27, 2022) (granting Tesla's motion to compel arbitration of claims based on arbitration clause in purchase agreement for Tesla car); *but see Hoff, v. Tesla, Inc.*, No. 2177-cv-00804, File Ref. No. 14 (Sup. Ct. Essex Cnty., Mass.) (denying motion to compel arbitration based on specific provisions in Tesla's Massachusetts contracts). While Tesla waived application of the arbitration clause with respect to the named Plaintiffs, it still would have been entitled to invoke the clause at class certification. If it did so, it likely would have prevented class certification. *See, e.g.*, *Farr v. Acima Credit, LLC*, No. 20-cv-8619-YGR, 2021 WL 2826709, at *7 (N.D. Cal. July 7, 2021) ("district courts in the Ninth Circuit have decided class certification is properly denied based upon the existence of an arbitration agreement and class action waiver applicable to unnamed class members but not the proposed class representative") (collecting cases).

Regarding liability, the Settlement Class was on reasonably strong footing, at least with respect to the breach of contract claim. The Settlement Class's related fraud theories, however, were on much shakier ground: as the Court found in ruling on motion to dismiss, the timeline laid out by the Complaint supports that the April 2021 price increase was a *post hoc* decision made to rescue a struggling business component rather than the crux of a premeditated bait-and-switch scheme. (Dkt. 79 at 3-4.) *See Immanuel Lake v. Zogenix, Inc.*, No. 19-CV-01975-RS, 2020 WL 3820424, at *8 (N.D. Cal. Jan. 27, 2020) (expressing the "general principle" that "to be actionable, a statement or omission must have been misleading at the time it was made; liability cannot be imposed on the basis of subsequent events") (citing *Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 693 (9th Cir. 2011)). Moreover, Tesla has also always represented that later discovery would demonstrate that the changes in pre-installation costs were a normal, expected part of the Solar Roof process disconnected from the increase to the price of the Solar Roof itself. (Dkt. 109-1 ¶ 26.)

Limited to a breach-of-contract claim, the Settlement Class's case on damages and any potential equitable relief faced some hurdles to success as well. Recall that the principal form of relief sought by the contract, and one of the key benefits secured by the Settlement, is an order, in

- 13 -

the nature of specific performance, compelling installation of the Solar Roofs for Class Members at the agreed-upon price. Tesla would have strong arguments that specific performance is *not* available in circumstances like those presented here because Plaintiffs' legal remedies are adequate under the law. The operative complaint explains that Tesla's Solar Roof is a unique product, but Plaintiffs are unaware of any case compelling specific performance in similar circumstances. In fact, California treatises intone that "as a general rule, equity will not enforce specific performance of a sale of personal property" absent proof that some "specific quality" in the item gives it "special value" to the purchasing party. 58 Cal. Jur. 3d *Specific Performance* § 49 (Aug. 2023 ed.). Moreover, Tesla's decision to change its service territory, and certain updates to the relevant technology, would have rendered specific performance impossible for a certain portion of the Class, whether because they are no longer in an area serviced by Tesla or because their contract calls for the installation of a type of roof that uses parts that are no longer manufactured.

As to damages, Tesla's decision to reverse the price increase also poses a significant issue, as the decision arguably undoes any contractual breach based upon the price increase itself. And although the Court found that the price restoration did not amount to constitutional mootness, Tesla has indicated that it would argue that its agreement to honor the original price shows that Class Members have no outstanding damages because they already had the chance to get their Solar Roofs at the original cost. Plaintiffs would then have been left to seek consequential damages in the form of preparatory work that had to be redone in view of the delays that Plaintiffs argue were caused by Tesla's decision to increase the price of its Solar Roof. But the contract explicitly waives such damages, providing that Tesla's "liability . . . is limited to the Contract Price" and that Tesla is "not liable to you for any indirect, special or consequential damages." (Dkt. 63-1, Ex. A, T&C ¶ 13.) And as Tesla argued, California courts routinely uphold the validity of clauses limiting contractual liability. (*See* Dkt. 63 at 12 (citing *Darnaa, LLC v. Google LLC*, 756 F. App'x 674, 677 (9th Cir. 2018) (affirming dismissal of contract claim subject to limitation of liability clause)); *Huynh v. Quora, Inc.*, No. 18-cv-7597-BLF, 2019 WL 11502875, at *11 (N.D. Cal. Dec. 19, 2019) (dismissing contract claim subject to limitation of liability clause); *Food Safety Net Servs. v. Eco Safe Sys. USA,*

- 14 -

*Inc.*, 209 Cal. App. 4th 1118, 1126 (2012) (clauses limiting contractual liability "have long been recognized as valid in California" and so a claim "for the breach of [defendant's contractual] obligations failed in light of a contract provision limiting [defendant's] liability").) Given Telsa's arguments, the amount offered is an exceptional recovery.

### ii.    The Class's reaction confirms that the Settlement secures outstanding relief.

In light of these substantial hurdles to recovery on the merits, the relief secured by the Settlement is outstanding. First, through the Settlement Tesla agreed to honor the original contract price for any Settlement Class Member who elected to proceed with installation before April 24, 2023. Over 1,500 Solar Roofs have been installed at the original pricing providing approximately $115,000,000 to the class. (*See* Dkt. 115 at 10.) Second, the Settlement establishes a $6,080,000 Settlement Fund. (Dkt. 109-1, Ex. 1, Settlement ¶ 1.32; Dkt. 101.) The Settlement Fund is divided up to provide three types of payments to the Settlement Class. (*Id.*) The first are payments to defray Increased Installation Costs for individuals within Tesla's existing service territory who elected to enter into a new contract for a Solar Roof after the April 2023 cutoff date. (Dkt. 109-1, Ex. 1, Settlement ¶ 2.3.) The second are payments to defray Out-of-Pocket Costs that were incurred as a result of delays in installation or cancelation of contracts suffered as a result of the April 2021 price increase. (*Id.* ¶ 2.2.) Finally, the Settlement also secures an Automatic Payment for Class Members who haven't otherwise submitted an Approved Claim for their troubles. (*Id.* ¶ 2.1.)

Ultimately, the Parties and the Settlement Administrator determined that twenty-six (26) Class Members submitted potentially valid claims for Increased Installation Costs, and that these claims will ultimately reach somewhere between $2,412,518.72 and $2,972,306.72. (Rapp Decl. ¶ 12.)[5] Assuming these assumptions are accurate, these Class Members will therefore receive no less

---

[5]    193 Class Members submitted facially valid claims for Increased Installation Cost Payments, however, this just means that the claims were timely submitted. Of these, a number of Class Members incorrectly filed for Increased Installation Cost Payments, when they in fact should have filed an Out-of-Pocket Loss Claim, because their roofs had already been installed. (*See* Settlement Agreement ¶ 2.3.) Others are outside of Tesla's service area. (*Id.*) As such, as of the date of this

PLAINTIFFS' MOTION FOR
FINAL APPROVAL

CASE NO. 3:21-cv-3577-VC

than just under 75% of the difference in installation costs, which is better than the 25% recovery

Counsel anticipated at preliminary approval. (*See* Dkt. 109 at 29.) The Parties and Settlement

Administrator also determined that 158 Class Members submitted claims for Out-of-Pocket Costs,

totaling $2,553,289.43. (O'Kane Decl. ¶ 16.) While the Settlement Administrator has requested

further documentation from the majority of these individuals, and to date, only approved

$733,077.18 as valid (*id.* ¶¶ 24-25), this number is expected to increase as the additional

documentation submitted by Class Members is reviewed.[6] Additionally, as previously discussed, the

Settlement Administrator is making additional efforts to substantiate claims, if and when possible.

(*Id.* ¶ 26.) In any event, even if the full $2,553,289.43 in proposed claims was approved, which is

very unlikely, these Class Members will receive no less than 55% of their claimed Out-of-Pocket

Costs, which is greater than the amount projected in Class Counsel preliminary approval papers.[7]

Considering the hurdles to recovery as a class and on the merits, these amounts represent an

outstanding return for Settlement Class Members. *See, e.g.*, *Harrison v. Bank of America*, No. 19-cv-

316-LB, 2021 WL 5507175, at *3 (N.D. Cal. Nov. 24, 2021) (approving settlement that returned

approximately 20% of total damages); *Rodriguez v. West Publ'g Co.*, 563 F.3d 948, 965 (9th Cir.

---

filing, only 26 Class Members have a potentially valid Increased Installation Cost Payment claim.
(O'Kane Decl. ¶¶ 27-30.) These are only "potentially" valid because their validity cannot be
determined until their roofs are installed and proof of payment is submitted. Additionally, the Class
Members who incorrectly filed an Increased Installation Cost Payment claim, will have the
opportunity to recover from the Out-of-Pocket Loss Fund, assuming sufficient documentary proof is
received.

[6]     The reason for the denial or partial denial of Out-of-Pocket claims varies, but generally result
from the lack of documentation substantiating an actual loss and/or submissions claiming unusually
high losses with no explanation as to how the purported damages at issue resulted from the April
2021 price increase. (O'Kane Decl. ¶ 23.) For example, one class member claimed Out-of-Pocket
Losses in the amount of around $200,000, without providing proof of any payment or explanation as
to how the lost resulted from Tesla's price increase. (*Id.*) Other individuals claiming over $90,000,
$70,000, and $67,000 claims suffered the same deficiencies. (*Id.*) Many other claims suffer from
similar issues. (*Id.*)

[7]     Class Counsel will provide the Court with an updated accounting of the available claims
information prior to the final approval hearing, including updated information about the number of
Out-of-Pocket claims approved as valid and the monetary value of such claims. It will also provide
an update regarding the Increased Installation claims, if any.

PLAINTIFFS' MOTION FOR                                    CASE NO. 3:21-cv-3577-VC
FINAL APPROVAL

1   2009) (settlement returning 30% of estimated losses back to class members, that "the negotiated

2   amount is fair and reasonable no matter how you slice it").

3       Three objections were filed during the claims period, all of which focused on aspects of the

4   relief provided that each particular objector found inadequate. (Rapp Decl. ¶ 4.) Two of these

5   objectors have requested to withdraw their objections, after Class Counsel worked through the issues

6   identified with Tesla, so only one objection remains (*id.* ¶¶ 5-9), a strong indicator of settlement

7   fairness. *See Dyer v. Wells Fargo Bank, N.A.*, 303 F.R.D. 326, 332 (N.D. Cal. 2014) ("the absence of

8   a large number of objections to a proposed class action settlement raises a strong presumption that

9   the terms of a proposed class settlement action are favorable to the class members") (citations

10  omitted). Still, a closer examination of each objection shows that none of the objections show that

11  the relief here is not meaningful or adequate.

12      First, Objector Michelle Prevost complains that Tesla added pretextual costs to the work

13  Tesla needed to do to prepare for installation of the subject Solar Roof in order to raise the cost even

14  after Tesla agreed to reverse the price increase. (Dkt. 116.) Class Counsel has investigated the

15  circumstances of Objector Prevost's claim, and in speaking with hundreds of Class Members during

16  their investigation and shepherding of the claims process, no one else has mentioned the same

17  decking issue of which Objector Prevost complains. (Rapp Decl. ¶ 5.) Additionally, Tesla has

18  confirmed to Class Counsel that the additional costs incurred have nothing to do with the April 2021

19  price increase that is the gravamen of Plaintiffs' complaint. (*Id.*) Specifically, Objector Prevost

20  complains that the project at issue incurred additional costs of $14,100, which includes $5,000 for

21  the costs of an electrical panel that does not appear to be disputed. (Dkt. 116 at 3.) According to

22  Tesla, of the $9,100 Objector Prevost objects to, $6,340 resulted because the roof at issue did not

23  have the required decking overlay, which given its location under the existing roof, could not have

24  been foreseen nor determined prior to tearing off the roof at the time of installation. (Rapp Decl.

25  ¶ 6.) The additional $2,760 resulted from "roof obstacles," which Tesla claims it disclosed to

26  Objector Prevost and it received full approval for. (*Id.*) The remaining costs were associated with

27  what Tesla admits was "human error" on costs associated with electric panel upgrades, but Tesla

28  - 17 -

1  claims it resolved that specific issue (*id.*), and as noted above, it does not appear that Objector

2  Prevost is objecting to those costs. (Dkt. 116 at 3.)

3      As such it is clear that the issues Objector Prevost complains about are unique and not

4  indicative of an issue affecting all Class Members, nor do they have any significant bearing on the

5  classwide relief secured by the Settlement. Indeed, it appears that Objector Prevost's issues arise

6  from the normal review process conducted by Tesla before installing the Solar Roof. And while that

7  process could arguably have been more effectively managed in Objector Prevost's specific situation,

8  Tesla's contracts, and Objector Prevost's contract specifically, alert clients that such unforeseen costs

9  could arise. (*See, e.g.*, Dkt. 116 at 13, Tesla Solar Roof Contract ¶ 2 ("If Tesla encounters unforeseen

10  conditions at the installation location or causes a change to the solar portion of your Solar Roof, you

11  will receive an updated Price Sheet to accept or reject"); *see also id.* at 26, Solar Roof Disclosure

12  ("[i]f the final cost or scope of work needed for your installation are greater than anticipated, Tesla

13  will provide you with an amendment pursuant to this Solar Roof [contract].").) As such, this is not

14  the type of systematic price increase at issue in this case. And, Objector Prevost always had the

15  option of requesting exclusion from the Settlement Class if individual relief outside of the Settlement

16  was desired.

17      Class Member Tushar Irani lodged, and then withdrew, an untimely objection observing that

18  his claim for Increased Installation Costs was denied on the ground that he is outside of Tesla's

19  updated service area, even though Tesla's website shows that he is within the geographic area

20  serviced by Tesla itself (as opposed to locations where third-party installers must install the Solar

21  Roof). (Rapp Decl. ¶ 8; O'Kane Decl. ¶¶ 20, 30.) This objection was sent to the Settlement

22  Administrator, but never formally filed with the Court. (Rapp Decl. ¶ 8; O'Kane Decl. ¶¶ 20, 30.)

23  Class Counsel inquired with Tesla regarding the discrepancies between the information the company

24  provided to the Settlement Administrator and the information available on Tesla's website. (Rapp

25  Decl. ¶ 8.) Tesla represented that due to a technical glitch the information it provided to the

26  Settlement Administrator was incorrect. (*Id.* ¶ 8; O'Kane Decl. ¶ 30.) In the end, it was determined

27  that Mr. Irani *is* eligible to claim Increased Installation Cost relief. (*Id.*) As such, assuming he meets

28

- 18 -

1    the other criteria for this relief (e.g., timely submits proof of payment for his new roof), his claim

2    will be processed as valid. (O'Kane Decl. ¶ 30.)

3          It was also determined that this technical glitch affected certain additional claims, which

4    were processed as valid once this issue was resolved. (Rapp Decl. ¶ 9; O'Kane Decl. ¶ 30.) All

5    affected claimants were also directly notified of the issue and it's resolution by the Settlement

6    Administrator. (O'Kane Decl. ¶ 30.) As a result of these actions, Mr. Irani agreed that there was no

7    need to formally file his objection and confirmed that it could be withdrawn. (Rapp Decl. ¶ 9; *see*

8    *also id.* at Ex. A, January 23, 2024 Emails between Tushar Irani and Eve-Lynn Rapp.) Because no

9    "payment or consideration" was offered or provided, the Court should approve Mr. Irani's

10   withdrawal of his objection. *See* Fed. R. Civ. P. 23(e)(5)(B)(i); *see also In re Zoom Video Commc'ns,*

11   *Inc. Priv. Litig.*, No. 20-CV-02155-LB, 2023 WL 2214177, at *3 (N.D. Cal. Feb. 23, 2023)

12   (discussing standards for approving withdraw of objection when consideration is in fact provided).

13         Finally, Bruce Humphrey also filed an objection before later withdrawing it. (Dkts. 117, 118.)

14   In the now-withdrawn objection, Mr. Humphrey raised the concern that § 2.4(c) of the Settlement

15   Agreement permitted Tesla to cancel any roof installation contracts for customers who did not have

16   an installation date scheduled by April 24, 2023. (Dkt. 117.) That is not what that provision means.

17   Rather, § 2.4(c) merely confirms that, in addition to the other monetary and prospective relief

18   already afforded, Tesla will automatically "refund any deposits paid by Settlement Class Members"

19   who have opted to not have their Solar Roof installed and/or cancelled their contract by the Effective

20   Date if that has not already happened. (Dkt. 109-1, Ex. 1, Agreement ¶ 2.4(c).) Tesla has confirmed

21   as much too, as it has specifically represented that it does not understand that provision to have the

22   meaning Mr. Humphrey was concerned about. In short, this relief is a benefit to the Class.

23   Furthermore, because Mr. Humphrey complained about delays in his roof installation, Class Counsel

24   worked with Tesla to schedule Mr. Humphrey for a prompt roof installation. (Rapp Decl. ¶ 7.) As a

25   result, Mr. Humphrey decided to exclude himself from the Settlement Class (Dkt. 118), which

26   removes his standing to object to the Settlement. To the extent securing a date for the installation of

27

28

PLAINTIFFS' MOTION FOR                                    CASE NO. 3:21-cv-3577-VC
FINAL APPROVAL

1  his Solar Roof could be "consideration," the Court should approve the withdrawal of his objection as

2  well and accept his request to be excluded.

3          In sum, none of the objections identify any issues with the Settlement that require denial of

4  judicial approval. Further, thirty (30) Class Members (or approximately .3% of the Settlement Class)

5  excluded themselves from the Settlement, likely reflective of Tesla's small but unusually devoted

6  customer following or individuals who decided to purse relief outside of the litigation. When

7  contrasted against the Class's generally positive reaction to the Settlement, and the outstanding

8  benefits provided by the Settlement, it is clear that the relief provided by the Settlement supports

9  final approval.

10                          **iii.    The remaining factors show that relief is adequate.**

11         The other required factors are easily satisfied. First, the Settlement contains an effective

12  method for distributing relief to Settlement Class Members. Both the Increased Installation Cost and

13  Out-of-Pocket Cost claims required supporting documentation. (Dkt. 109-1, Ex. 1, Settlement ¶¶ 2.2,

14  2.3.) The Settlement Administrator sent follow up communications asking Class Members to correct

15  any deficiencies if they did not submit adequate documentation. (O'Kane Decl. ¶¶ 24, 26, 28-29.)

16  Further, producing the required documentation was not burdensome. Class Members were merely

17  required to substantiate claimed losses to demonstrate that their damages stemmed from Tesla's

18  delay and/or cancellations, such as providing invoices or proof of payment. Class Counsel also

19  provided assistance to Class Members directly. (Rapp Decl. ¶¶ 10, 13.)

20         Distribution of relief will also be effective. Class Members who did nothing will be mailed a

21  paper check with their Automatic Payment or, if they elected to receive their payment electronically,

22  through Zelle, Venmo, or ACH. (Dkt. 109-1, Ex. 1, Settlement ¶ 2.1.) 298 Class Members took

23  advantage of this electric payment option (O'Kane Decl. ¶ 18), and there is no indication that Class

24  Members found these distribution methods to be ineffective or cumbersome. "Distribution methods

25  such as these are regularly approved as fair and reasonable," *Andrews v. Plains All Am. Pipeline,*

26  *L.P.*, No. 15-cv-4113, 2022 WL 18143936, at *2 (C.D. Cal. Sept. 20, 2022). The Court should

27  therefore find that the plan of distribution here likewise weighs in favor of settlement approval.

28                                                 - 20 -

PLAINTIFFS' MOTION FOR                                          CASE NO. 3:21-cv-3577-VC
FINAL APPROVAL

1    Class Counsel has also formulated a procedure to ensure that Class Members receive their

2    payments as quickly as possible in light of the Settlement terms and structure. Specifically, Class

3    Members who are to receive Automatic Payments and Out-of-Pocket Loss Payments will be paid

4    within twenty-eight (28) days of the Effective Date. (Dkt. 109-1, Ex. 1, ¶¶ 2.1(b), 2.2(d),

5    respectively.) If the Out-of-Pocket-Loss claims do not exceed the allotted size of the fund

6    ($1,406,400), full payment of those approved claims will be made. (*Id.* ¶ 2.2(b).) Alternatively, if the

7    Out-of-Pocket Fund is exhausted, Class Members will receive their *pro rata* shares, so that payment

8    can be expeditiously made. (*Id.*) Increased Installation Payments will be made promptly (within 28

9    days) upon completion of the Class Member's specific claim–i.e., when proof of payment and

10   installation of the Solar Roof is submitted to the Settlement Administrator. (*Id.* ¶ 2.3(b).) And,

11   should a second round of *pro rata* distributions be necessary (either as a result of uncashed checks or

12   extra money in any of the funds), such payments will be made within twenty-eight (28) days of

13   payment of all valid Increased Installation Cost Payments.

14    Next, the below-benchmark request for attorneys' fees weighs in favor of settlement

15   approval, for the reasons set forth above and in Plaintiff's Motion for Attorney's Fees. (Dkt. 115.)

16   Notably, as a result of their efforts since that filing, Class Counsel has collectively spent nearly 120

17   hours of additional time on this case assisting class members and preparing for final approval. As

18   such, their current lodestar is approximately a 1.18 multiplier of the $1,500,00 requested fee. (Rapp

19   Decl. ¶ 14.) And, moreover, Class Members filed no objections to the requested attorney's fees.

20    Last, there are no agreements required to be disclosed under Fed. R. Civ. P. 23(e)(3).

21    Thus, the relief secured by the Settlement weighs in favor of final approval.

22    **D.    The Settlement treats Class Members equitably relative to each other.**

23    The final Rule 23(e) factor concerns whether the proposed settlement treats class members

24   equitably relative to each other. Courts consider "whether the apportionment of relief among class

25   members takes appropriate account of differences among their claims, and whether the scope of the

26   release may affect class members in different ways that bear on the apportionment of relief." Fed. R.

27   Civ. P. 23(e), Advisory Committee's Note to 2018 Amendment.

28

PLAINTIFFS' MOTION FOR
FINAL APPROVAL

CASE NO. 3:21-cv-3577-VC

1    The Settlement easily passes this test, as it provides a baseline recovery, with higher amounts

2    available to those able to demonstrate greater measurable losses. Courts routinely approve allocation

3    plans of this nature. *See, e.g.*, *Diaz v. United Parcel Serv., Inc.*, No. 22-cv-246, 2023 WL 3624779, at

4    *15 (E.D. Cal. May 24, 2023) (finding this factor met in settlement with pro rata distribution of

5    portion of settlement fund and greater payments for part of settlement class because of "the dramatic

6    difference in the proposed damages between the two claims"); *Altamirano v. Shaw Indus., Inc.*, No.

7    13-cv-939-HSG, 2015 WL 4512372, at *8 (N.D. Cal. July 24, 2015) (finding no preferential

8    treatment among class members because "the revised plan of allocation submitted to the Court

9    compensates class members in a manner generally proportionate to the harm they suffered on

10   account of [the] alleged misconduct").

11   Such a distribution model is equitable under the facts of this case because while all Class

12   Members possess identical claims for relief, amounts of consequential damages, if any, vary by

13   Settlement Class Member, and some Settlement Class Members will not have acted quickly enough

14   to reschedule their installations at pre-April 2021 pricing (though they had ample time). And Tesla

15   possesses a strong argument that Settlement Class Members who *did* have their Solar Roofs installed

16   under the original pricing suffered no damages whatsoever, at least under a breach-of-contract

17   theory. The varying strength of these damages claims is reflected in the allocation model embodied

18   by the Settlement, which the Court should therefore find to be equitable.

19   Finally, while the Class Representatives have petitioned for service awards, such awards do

20   not represent inequitable treatment. Such awards are common and recognize that representative

21   litigation could not happen without the presence of a class representative in the first place. The Class

22   Representatives explained in their motion seeking these awards why they are justified in this case,

23   and the awards sought are in line with awards previously approved in this District. *See Deluca v.*

24   *Farmers Ins. Exch.*, No. 17-cv-34-TSH, 2020 WL 5071700, at *8 (N.D. Cal. Aug. 24, 2020)

25   (approving $10,000 award to two named plaintiffs and observing that the awards were only 0.19% of

26   the $5.4M settlement fund in that case). And because, of course, any such award must be approved

27   by the Court, these awards are not indicative of preferential treatment. *See Juarez v. Social Fin., Inc.*,

28

- 22 -

1  No. 20-cv-3386-HSG, 2022 WL 17722382, at *6 (N.D. Cal. Dec. 15, 2022) (noting that settlement's

2  provision for an incentive award did not indicate preferential treatment because any such award

3  would need to be supported with evidence). Finally, it bears noting that there are no objections to the

4  proposed service awards.

5        In sum, the Settlement passes muster under Fed. R. Civ. P. 23(e), and the additional

6  considerations mandated by the Ninth Circuit. Even under a rigorous review, the Settlement is

7  worthy of final approval.

8                                    **CONCLUSION**

9        The Court should (1) confirm certification of the Settlement Class, including its naming of

10  Matthew Amans and Babak Malek as Class Representatives, and its appointment of Eve-Lynn J.

11  Rapp, Peter Muhic, and Sarvenaz Fahimi as Class Counsel, (2) find that notice comported with Due

12  Process, and (3) grant final approval to the Settlement. The proposed final approval order submitted

13  with this brief sets the schedule for the submission of the mandated post-distribution accounting.

14

15                                        Respectfully submitted,

16                                        **MATTHEW AMANS** and **BABAK MALEK**,
                                          individually and on behalf of all similarly
17                                        situated individuals,

18  Dated: January 30, 2024               /s/ Eve-Lynn J. Rapp
                                          EVE-LYNN J. RAPP (SBN 342892)
19                                        erapp@edelson.com
                                          **EDELSON PC**
20                                        2101 Pearl Street
                                          Boulder, Colorado 80302
21                                        Tel: 720.741.0084
                                          Fax: 720.741.0081
22

23                                        RAFEY S. BALABANIAN (SBN 315962)
                                          rbalabanian@edelson.com
24                                        JOHN AARON LAWSON (SBN 319306)
                                          alawson@edelson.com
25                                        YAMAN SALAHI (SBN 288752)
                                          ysalahi@edelson.com
26                                        **EDELSON PC**
                                          150 California Street, 18th Floor
27                                        San Francisco, CA 94111

28                                        - 23 -

1    Tel: 415.212.9300
     Fax: 415.373.9435

2    SARVENAZ J. FAHIMI (SBN 226148)
3    sfahimi@cpmlegal.com
     **COTCHETT, PITRE & MCCARTHY, LLP**
4    San Francisco Airport Office Center
     840 Malcolm Road
5    Burlingame, CA 94010
     Tel: 650.697.6000
6    Fax: 650.697.0577

7    PETER A. MUHIC (*pro hac vice*)
8    pm@millerlawpc.com
     **THE MILLER LAW FIRM, PC**
9    950 W. University Dr., Suite 300
     Rochester, MI 48307
10   Tel: 248.841.2200
     Fax: 248.652.2852

11
12   *Counsel for Plaintiffs*

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' MOTION FOR                    CASE NO. 3:21-cv-3577-VC
FINAL APPROVAL